STATE of Wisconsin, Plaintiff-Respondent,

v.

Stephen A. PERRY, Defendant-Appellant.†

Court of Appeals

*No. 93–1309–CR. Submitted on briefs October 25, 1993.—Decided December 7, 1993.*

(Also reported in 510 N.W.2d 722.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Charles Bennett Vetzner*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Mary E. Burke,* assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Stephen Perry appeals a judgment of conviction and an order denying postconviction relief. Perry bases his appeal on three arguments: that he was impermissibly charged with inconsistent crimes for the same act—attempted murder and aggravated battery; that the court erred by denying his request for a lesser-included offense instruction on negligent use of a weapon; and that the court lacked authority to initiate restitution proceedings because the statutory time period for doing so had run. We reject Perry's argu-

ments, and, therefore, we affirm the judgment and order.

The incident leading to Perry's conviction arose when a friend, John Gipson, came to Perry's dormitory room around 2 a.m. and explained that he had been in a fight with the victim, David Wald. Gipson was supposed to meet Wald the next day, but instead asked Perry to accompany him to take care of it that night. Gipson and Perry then went to a friend's house. Perry waited in the car while Gipson went in. Gipson returned with a folding knife that he threw to Perry, who put it in his back pocket.

Gipson and Perry then went to look for Wald and found him. Perry and Wald each have a different version of the encounter. Wald's version suggested that Perry and Gipson approached him and that both Perry and Wald swung at each other at the same time, but only Perry's swing connected—on Wald's forehead. Wald contended that by the time he recovered from the first blow, both Perry and Gipson were attacking him. The attack ended when other people arrived and pulled Gipson off of Wald. Perry ran away.

Perry argued that Wald was the aggressor and that Perry was randomly swinging the knife he was holding in order to get Wald off of him. It is uncontroverted that Wald suffered numerous injuries from the knife.

## MULTIPLE CHARGES

The state initially charged Perry with attempted intentional homicide. Later, it also charged him with aggravated battery. The jury found Perry not guilty of attempted murder, but guilty of aggravated battery.

■

Perry contends that charging him with both aggravated battery and attempted intentional homicide for the same act was improper because the two crimes are inconsistent. Without citing any authority, Perry contends that the state cannot bring multiple inconsistent charges for the same act. Although there is no law which holds that a defendant cannot be charged with inconsistent crimes for the same act, it is well established that multiple punishments for the same offense is double jeopardy, and therefore a violation of due process. *See State v. Johnson*, 178 Wis. 2d 42, 48, 503 N.W.2d 575, 576 (Ct. App. 1993). Although Perry does not present it as such, it appears he is making a double jeopardy argument.

> The proscription against double jeopardy provides basic protections to persons charged with committing a crime: protection against a second prosecution for the same offense after either acquittal or conviction; and protection against multiple punishments for the same offense.

*Id.* Because Perry was convicted of, and therefore punished for, only one crime, we need not address a double jeopardy argument.

■

Perry also contends that his conviction in this case may have resulted from a jury compromise in the face of the multiple charges and an erroneous belief that a person alleged to have committed multiple offenses should not be acquitted altogether. Perry bases this argument on the dissenting opinion in *Johnson.* Despite any credence this argument may have, it is not the law. A dissent is what the law is not.

49

Perry's speculative argument concerning the possibility that the conviction was a result of compromise due to the jurors' erroneous belief that a person charged with multiple offenses should not be acquitted altogether does not persuade us. "That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters." *Dunn v. United States*, 284 U.S. 390, 394 (1932).

## LESSER-INCLUDED OFFENSE

Next, Perry asserts that the trial court improperly refused to instruct the jury on injury by negligent use of a dangerous weapon. He contends that the instruction should have been included because negligent use of a dangerous weapon is a lesser-included offense of the charged crime of aggravated battery when, as in this case, the aggravated battery charge includes a penalty enhancer for using a dangerous weapon. *See* secs. 940.24, 940.19(2) and 939.63(1)(a)2, Stats. Assuming without deciding that negligent use of a dangerous weapon is a lesser-included offense of aggravated battery with the dangerous weapon penalty enhancer, we conclude that the error, if any, was harmless.

Perry was charged with aggravated battery while using a dangerous weapon, contrary to sec. 940.19(2), Stats. The trial court also instructed the jury on two lesser-included offenses: causing great bodily harm with the intent to cause bodily harm, contrary to sec. 940.19(1m), and causing bodily harm with the intent to cause bodily harm, contrary to sec. 940.19(1). The jury found him guilty of the lesser-included offense of caus-

ing great bodily harm with the intent to cause bodily harm, contrary to sec. 940.19(1m).

██

We presume that the jury followed the instructions given to it. *See State v. Deer*, 125 Wis. 2d 357, 364, 372 N.W.2d 176, 181 (Ct. App. 1985). The jury was instructed to first consider the elements of the crime charged. If they were satisfied beyond a reasonable doubt that Perry committed the acts which constituted the crime, they were to find him guilty. If they were not satisfied, then, and only then, they were to go on to consider the first lesser-included offense—causing great bodily harm with the intent to cause bodily harm. Only if the jury was not satisfied beyond a reasonable doubt that Perry was guilty of this crime were they to go on to the next lesser-included offense—causing bodily harm with the intent to cause bodily harm. The jury did not reach this point because it found Perry guilty of causing great bodily harm with the intent to cause bodily harm.

This situation is analogous to that in *State v. Truax*, 151 Wis. 2d 354, 444 N.W.2d 432 (Ct. App. 1989), in that the situation allows the jury to disregard the lesser-included offense if agreement is reached on a finding of guilt of the greater offense. On the other hand, it is distinguished from the other type of lesser-included offenses where, even if the jury finds all elements of the greater offense, it must consider all the lesser offenses to determine whether mitigating circumstances necessitate a guilty finding on the lesser of the offenses. *See id.* at 362 n.2, 444 N.W.2d at 436 n.2.

In *Truax*, the jury was instructed on first- and second-degree murder. The jury convicted Truax of first-degree murder. Consequently, this court held that the failure to instruct the jury on the lesser-included

offense of homicide by reckless conduct was harmless. We stated in *Truax*:

> [I]f a defendant is charged with offense "A" of which "B" is the next immediate lesser-included offense (one step removed) and "C" is the next below "B" (two steps removed), then when the jury is instructed on "B" yet still convicts the accused of "A" it is logical to assume that the panel would not have found him guilty only of "C" (that is, would have passed over "B"), so that the failure to instruct on "C" is harmless.

*Id.* at 364, 444 N.W.2d at 437 (quoting *State v. Abreau*, 363 So. 2d 1063, 1064 (Fla. 1978)).

Similarly, Perry was charged with aggravated battery (A), and the lesser-included offense one step removed, causing great bodily harm (B), and the lesser-included offense two steps removed, causing bodily harm (C). While the court did not instruct on the offense that Perry argues is the next step removed, negligent injury to a person by dangerous use of a weapon (D), because the jury was instructed on "C" but found him guilty of "B," it is logical to assume they would not have passed over "C" to convict him of "D." Consequently, under these facts, we conclude that if the trial court committed error by not instructing on negligent injury to a person by dangerous use of a weapon, the error did not cause any prejudice and was, consequently, harmless.

### *RESTITUTION*

Perry next argues that the order for restitution should be vacated because the trial court lacked authority to proceed with a restitution hearing once the

statutory time period for such hearing had expired. Because we conclude that the sixty-day restitution determination period in sec. 973.20(13)(c)2, Stats., is directory, not mandatory, we reject Perry's request for relief.

Other than the time frame, the procedures undertaken by the trial court to determine Perry's restitution obligation conformed with sec. 973.20(13)(c)2, Stats., providing that the sentencing court may: "Adjourn the sentencing proceeding for up to 60 days pending resolution of the amount of restitution by the court, referee or arbitrator."

■

Time periods in Wisconsin statutes may be directory or mandatory. Generally,

> a statute prescribing the time within which public officers are required to perform an official act is merely directory, unless it denies the exercise of power after such time, or the nature of the act, or the statutory language, shows that the time was intended to be a limitation.

*State v. Industrial Comm'n*, 233 Wis. 461, 466, 289 N.W. 769, 771 (1940). Whether a statutory time period is directory or mandatory presents a question of statutory construction and is reviewed independently by the appellate court. *Eby v. Kozarek*, 153 Wis. 2d 75, 79, 450 N.W.2d 249, 251 (1990).

■

There are four relevant factors in determining whether a statutory time limit is mandatory or directory: "the objectives sought to be accomplished by the statute, its history, the consequences which would follow from the alternative interpretations, and whether

53

a penalty is imposed for its violation." *State v. R.R.E.*, 162 Wis. 2d 698, 708, 470 N.W.2d 283, 286 (1991).

■

Because the statute's history leads us to the statute's objectives, we will consider these first two factors together. The overall objective of sec. 973.20, Stats., is to efficiently compensate crime victims for their pecuniary loss. The legislature created sec. 973.20(13) in 1987 Wis. Act 398 (the 1987 Act). The Judicial Council prefatory note attached to the 1987 Act discloses that this legislation was developed by the Judicial Council Restitution Committee. The prefatory note also discloses that the Restitution Committee had been appointed to examine concerns raised by the Legislative Audit Bureau Report 85-10, "An evaluation of Restitution by Adult Probationers" (April 15, 1985). Consequently, Report 85-10 is a useful tool in determining the legislative intent behind sec. 973.20(13)(c)2.

■

Report 85-10 leads us to conclude that the objective behind sec. 973.20(13)(c)2, Stats., was to develop model procedures for restitution proceedings, not to prescribe mandatory time restraints. Report 85-10 described the then-current restitution determination procedures as inefficient and inconsistent. The report addresses a number of areas that could be improved to "facilitate the complete collection of restitution." Report 85-10 at 14.

Among other things, Report 85-10 called for a consistent approach in "setting timeliness standards for the beginning and completion of the restitution determination process." *Id.* at 17. Consequently, report 85-10 recommended that the Judicial Council and Department of Health and Social Services develop "model

procedures" for use by judges, district attorneys and probation agents in restitution proceedings. Report 85-10 characterized the "model procedures" as providing an option for judges seeking more uniformity in restitution proceedings.[1] *Id.* at 18. The history of the statute, which establishes that the overall objective is to "facilitate the complete collection of restitution," combined with the permissive language in Report 85-10 and in the statute, lead us to conclude that the objective of sec. 973.20(13)(c)2, Stats., was to provide a directory, not mandatory time period.

The next factor, the consequences which would follow from the alternative constructions, also supports a directory construction of sec. 973.20(13)(c)2, Stats. Construing the time period as mandatory could result in forcing a victim, as a result of circumstances beyond anyone's control, to go through the time, inconvenience

---

[1] Report 85-10 at 17-18 states in part:

Consistent policies and procedures to be used in making these determinations [of restitution] would speed the process and make it more fair. Achieving consistency is difficult, however, when the law intentionally allows some latitude in these matters and circuit court judges and district attorneys can exercise considerable independence. Nevertheless, frustrations with inadequate procedures and guidelines were expressed to us frequently enough to conclude that an effort to achieve consistency would be welcomed by many. We believe that the Judicial Council, whose charge it is to make recommendations on improving the administration of justice, may be in a good position to bring together judges and district attorneys to develop procedures which will bring consistency and fairness to the restitution process. We, therefore, recommend the Judicial Council and the Department of Health and Social Services work cooperatively to develop model procedures for judges, district attorneys and probation agents to use in determining victims' losses. Judges would continue to have the option to direct district attorneys or probation agents to use the suggested procedures, but for those who are seeking more uniformity, a method of achieving it would exist.

and expense of a civil suit in order to recover pecuniary losses.

Construing the time period as directory has no such negative consequence. In fact, it allows restitution proceedings held outside of the statutory time period for valid reasons to be upheld, thus achieving the overall goal of restitution. The situation at hand is an illustration of how a mandatory construction would defeat the goal of facilitating complete restitution for the victim in light of a compelling reason to not follow the statutory time period.

Because there were two persons charged with causing Wald's injuries, Perry and Gipson, the trial court determined that it would make most sense to hold Perry's restitution hearing in conjunction with his co-defendant's hearing. Consequently, Perry was required to wait until the conclusion of Gipson's trial. Although the result was that Perry's restitution hearing was outside of the statutory time period, it enabled the court to consider one defendant's restitution responsibility and ability to pay relative to the other's. There was no resulting prejudice to Perry, and the overall goal of restitution for the victim was effectively carried out.

The last consideration is whether a penalty is imposed for the violation of the statutory time period. Section 973.20(13)(c)2, Stats., contains no such penalty. Therefore, after considering all of the factors, we conclude that the time period within sec. 973.20(13)(c)2 is directory.

It is important to note that our conclusion that the sixty-day time period in sec. 973.20(13)(c)2, Stats., is directory should not be read to imply that the provision is merely discretionary or permissive. The legislature

56

intended that the time limit be followed, despite its intent that the defendant not avoid his or her obligation to pay restitution. Our determination that the provision is directory simply reflects that the legislature did not intend that the court be required in all cases to vacate the restitution order for a violation of the statutory time limitation. *See R.R.E.*, 162 Wis. 2d at 715, 470 N.W.2d at 289-90.

Furthermore, it should be noted that despite the directory construction, the trial court may be barred from holding a restitution hearing outside of the statutory time period if doing so would result in an injury or wrong. *Karow v. Milwaukee County Civil Serv. Comm'n*, 82 Wis. 2d 565, 572, 263 N.W.2d 214, 217-18 (1978). Perry has shown no such injury.

Perry also argues that the restitution order violated his constitutional protection against double jeopardy. Perry contends that increasing a valid sentence after it has commenced constitutes multiple punishments. *See United States v. Benz*, 282 U.S. 304, 307 (1931). Therefore, Perry argues the imposition of additional punishment, i.e., restitution, after his prison sentence had commenced was unconstitutional. We disagree.

Perry himself points out that courts in fact are allowed to increase or add restitution after the initial disposition. The law of double jeopardy largely conforms to the applicable statutory framework, but this is because the protection is keyed to the convicted offender's expectations about the finality of the punishment meted out. *See United States v. DiFrancesco*, 449 U.S. 117, 136-37 (1980). Perry knew at the conclusion of the September 1992 sentencing hearing that the res-

titution determination proceedings were very likely to follow; he had no legitimate expectation that he would escape the restitution order. Therefore, Perry's restitution determination proceedings did not offend any finality expectations. Consequently, no due process violation occurred.

*By the Court.*—Judgment and order affirmed.