PER CURIAM.
¶1 Mao Xiong appeals from an order denying his motion to vacate a restitution order entered five years after his judgment of conviction.[1] Xiong contends the restitution order was issued in violation of WIS. STAT. § 973.20(13)(c). We conclude the record is currently insufficient to provide a basis for the restitution award. We therefore reverse and remand for further proceedings.
BACKGROUND
¶2 In 2011, Xiong entered a no-contest plea to being party to the crime of second-degree intentional homicide. The charge was based upon allegations that Xiong stabbed and killed a man in a fight outside a bar.
¶3 Prior to sentencing, the victim's mother and wife submitted victim impact statements. The mother's statement requested $3,719 in restitution, consisting of $3,694 for lost time from work, plus $25 for the copay from a doctor's visit. The wife's statement included a chart showing that she had incurred $22,622.35 in funeral costs and her own unreimbursed medical bills, plus $201,136.59 in medical bills that had been either paid or "adjusted off" by insurance. The wife's statement also included some items that were not on the chart. In particular, she alleged that she had lost a $10,000 to $15,000 incentive bonus and an additional unspecified amount of income because she had taken disability leave, and she had incurred $1,181 in therapy bills and anticipated future bills from ongoing counseling. Neither the presentence investigation (PSI) nor an alternate defense PSI specified the total amount of restitution.
¶4 At the sentencing hearing, the circuit court indicated it would order restitution for "anything incidental to the burial," up to $1,000 for lost work, and any out-of-pocket medical expenses for the family, but it would not order restitution for insurance because it had "looked at these numbers, and it just-it-it's never going to happen." In conformity with the court's pronouncement, the judgment of conviction included provisions that Xiong pay restitution of "$1,000.00 for work loss (mother and wife)," as well as an unspecified amount of restitution "for funeral, marker, burial, and out of pocket medical," along with a "TBD" notation, which we construe to mean that additional restitution amounts were "to be determined."
¶5 In 2016, the Department of Corrections wrote to the circuit court requesting the amount of restitution. In response, the district attorney's victim/witness assistance coordinator submitted a letter memorandum asserting that the court had "ordered" restitution in the amount of $227,477.94 to the victim's wife and $3,719.00 to the victim's mother. Although the record does not include any documentation attached to the coordinator's letter explaining the source of these numbers, the State points out that the figures exactly correspond to the amounts identified in the original victim impact statements for the burial expenses, the wife's out-of-pocket medical bills, and the medical bills paid or adjusted off by insurance, plus the mother's claimed losses counted twice. Two days after the submission of the coordinator's letter-and without holding any evidentiary hearing or giving Xiong any opportunity to dispute the final amount of restitution-the court entered a restitution order for $227,477.94 to the victim's wife and $3,719.00 to the victim's mother.
¶6 Xiong moved to vacate the restitution order, arguing that the statutory time to finalize any amount of restitution that was still to be determined at the sentencing hearing had long since passed. Xiong further claimed that the restitution order violated the double jeopardy clause because it duplicated some portion of a multimillion-dollar civil judgment that had been entered against him in a wrongful death case. Xiong attached to his motion other documents showing that he had made repeated requests "for all information where these debts came from."
¶7 The circuit court denied the motion to vacate, noting that the victim/witness assistance coordinator had "provided the final figures Xiong was to pay." The court concluded that Xiong had not been prejudiced by the delay and that the double jeopardy clause did not apply.
¶8 Xiong next filed a motion for reconsideration in which he asked for a restitution hearing to refute the final amount of restitution. The circuit court denied reconsideration without addressing Xiong's request for a restitution hearing. The court provided additional reasons for its decision, stating that the need to accurately calculate the amount of damages in a wrongful death situation provided a valid reason for the delay in determining restitution, and that Xiong would be able to seek an offset of the restitution award by reopening the civil judgment in the wrongful death case. Xiong now appeals, renewing his challenges to the restitution order.
DISCUSSION
¶9 In determining whether and how much restitution is warranted to compensate the victim of a crime for which a defendant is being sentenced, a circuit court must take into account: (1) the amount of loss suffered by the victim as a result of the crime; (2) the financial resources of the defendant; (3) the present and future earning capacity of the defendant; (4) the needs and earning ability of the defendant's dependents; and (5) any other factors the court deems appropriate. WIS. STAT. § 973.20(13)(a). Before issuing an award, the court must provide the defendant an opportunity either to stipulate to the amount claimed by the victim or to present evidence and argument on these factors. Sec. 973.20(13)(c).
¶10 When a circuit court orders restitution but does not determine the full amount of restitution at sentencing, the statutes set forth four alternate procedures the court may use to finalize the amount due. WIS. STAT. § 973.20(13)(c) ; State v. Ziegler , 2005 WI App 69, ¶12, 280 Wis. 2d 860, 695 N.W.2d 895. Each of those four options includes its own time frame. Id. However, the statutory time frames for determining restitution after sentencing are directory, rather than mandatory. State v. Perry , 181 Wis. 2d 43, 53, 510 N.W.2d 722 (Ct. App. 1993). Thus, restitution orders resulting from proceedings held outside of the statutory time period may be upheld, taking into consideration: (1) the length of the delay and the validity of the reasons for it; and (2) whether the defendant has been prejudiced by the delay. Ziegler , 280 Wis. 2d 860, ¶¶14, 18.
¶11 A circuit court has discretion in determining the amount of restitution, including whether a defendant's criminal activity was a substantial factor in causing the victim's claimed expenses. Id. , ¶10. However, the scope of the court's authority to order restitution presents a question of statutory interpretation that we review de novo. Id.
¶12 Here, both the parties and the circuit court focused primarily on the time delay between the original sentencing hearing and the final restitution order. In doing so, they overlooked the fact that the homicide victim's wife and mother had not presented any new claims for restitution to the court following sentencing.[2] Thus the court had no opportunity to consider-and the defendant had no opportunity to dispute-the application of the restitution factors to any additional amounts of restitution that were "to be determined" following sentencing. Indeed, the record before us does not show that any new amounts of restitution were actually determined. Rather, it appears that some of the victims' original claims for restitution were inadvertently reinstated in the restitution order after having been disallowed at sentencing.[3]
¶13 We cannot evaluate whether a delay in bringing new restitution claims was justified in this case, or whether Xiong was prejudiced by that delay, without the circuit court's specification as to what, if any, new items of restitution have actually been considered and awarded. We conclude that the restitution order must be vacated because the current record does not provide a proper basis for the amount of the award.
¶14 We remand this matter to the circuit court for a restitution hearing at which: (1) the State must identify what, if any, postsentencing restitution claims the homicide victim's relatives are making and present any reasons why those specific claims have been delayed; (2) Xiong must be afforded an opportunity to refute the amount or his ability to pay any new postsentencing claims and to present any reasons why the delay has prejudiced his ability to do so; and (3) the court must reevaluate the timing of any postsentencing restitution claims with specific reference to the reasons for any delay in bringing the new claims and any prejudice caused by any delay, and must then specify the total amount of restitution it is allowing from both presentencing and postsentencing claims. In light of our decision to vacate the restitution award on other grounds, we need not address Xiong's double jeopardy argument.
By the Court. -Order reversed and cause remanded for further proceedings.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

The State suggests that Xiong should have filed an appeal from the restitution order itself, using the procedures set forth in Wis. Stat. Rule 809.30 (2017-18), rather than seeking relief from the order denying his motion to vacate. However, the State advises us that it does not seek dismissal on those grounds.
All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

The fact that the homicide victim's relatives had obtained a multimillion-dollar settlement against Xiong in a separate wrongful death proceeding did not relieve them of presenting their restitution claims in this case because not all of the damages awarded in a wrongful death action might satisfy the restitution factors. See, e.g. , State v. Stowers , 177 Wis. 2d 798, 805, 503 N.W.2d 8 (Ct. App. 1993) (holding that a trial court cannot order restitution for general damages, including pain and suffering).

If the State's supposition as to how the victim/witness assistance coordinator calculated the amount of restitution award is correct, then the calculation mistakenly failed to deduct the disallowed $201,136.59 in insured medical expenses and any lost income over $1,000 from the claimed amounts.