STATE of Wisconsin,
Plaintiff-Respondent,

v.

Alberto FERNANDEZ,
Defendant-Appellant.

Supreme Court

*No. 2007AP1403–CR. Oral argument December 9, 2008.
—Decided April 28, 2009.*

2009 WI 29

(Also reported in 764 N.W.2d 509.)

598

600

For the defendant-appellant the cause was argued by *Eileen A. Hirsch,* assistant public defender, with whom on the briefs was *Shelley M. Fite,* assistant public defender.

For the plaintiff-respondent the cause was argued by *Eileen W. Pray,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. N. PATRICK CROOKS, J. This case is before the court on certification from the court of appeals pursuant to Wis. Stat. § 809.61 (2005–06).[1] The court of appeals asks us whether *State v. Loutsch,* 2003 WI App

---

[1] All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

16, ¶ 25, 259 Wis. 2d 901, 656 N.W.2d 781 (Ct. App. 2002), correctly interprets the criminal restitution statute[2] when it states that a court may order only as much restitution as a defendant has the ability to pay within the term of the sentence.[3]

¶ 2. On the question involving restitution ordered during a sentence or probation term, we hold that the statute, when read as a whole, clearly permits a circuit court to order full restitution so long as it properly considers the defendant's ability to pay in setting the total restitution and, where applicable, in setting the amount that must be paid during any probation, parole, or extended supervision. The statute gives no indication that that power is curtailed when probation is involved. In fact, it is significant that in providing for converting unpaid restitution to civil judgments, the legislature, it seems clear, recognized that there would be circumstances where all the necessary restitution amounts often would not and could not be paid before the completion of the sentence or probationary period.

■

¶ 3. We therefore answer the certification from the court of appeals by holding that when a court has considered the defendant's ability to pay in setting

---

[2] Wis. Stat. § 973.20. The relevant provisions will be cited as we reach them.

[3] The instant case involves a withheld sentence and probation, with some restitution to be paid during probation; we therefore understand the court of appeals to be using the word "sentence" in its certified question in a manner broad enough to include a probationary disposition. *See Prue v. State,* 63 Wis. 2d 109, 114, 116, 216 N.W.2d 43 (1974)(noting that probation and sentence "are different concepts" but also recognizing that the word "sentence" "may be and often is used in a more general sense [to include the concept of probation]").

restitution, the length of the term of probation or of the sentence does not have any limiting effect on the total amount of restitution that may be ordered. Here the circuit court considered the defendant's ability to pay in ordering restitution, as the statute requires, and because the circuit court did not err in considering all the evidence presented at the restitution hearing or in awarding restitution to the victims in accord with the statute, we affirm the circuit court's order.

¶ 4. The issue presented here is not actually the issue that the *Loutsch* court was deciding. The focus of the *Loutsch* court's opinion was whether when ordering restitution a court may defer making a determination of ability to pay until completion of a prison sentence and commencement of extended supervision. *Id.*, ¶ 28. The holding we are asked to review is another proposition, which appears in paragraphs 25 and 28: "Read together, these sections [of the restitution statute] plainly contemplate that the court order at sentencing an amount of restitution that it determines the defendant will be able to pay before the completion of the sentence . . . ." *Id.*, ¶ 25.

¶ 5. Despite the fact that the paragraph[4] and the rest of the opinion are unquestionably focused on answering the question of *when* a determination of an ability to pay must be made, the court in the process appeared to answer a different question when it stated that a court could not defer determining the amount of restitution a defendant would be able to pay *during the term of his or her sentence.* This has been interpreted by

---

[4] The sentence immediately following reads, "These sections do not permit a court to *defer consideration of the defendant's ability to pay* when evidence of the defendant's ability to pay is presented." *State v. Loutsch,* 2003 WI App 16, ¶ 25, 259 Wis. 2d 901, 656 N.W.2d 781 (Ct. App. 2002) (emphasis added).

some[5] as saying that the total restitution ordered cannot exceed what the defendant has the ability to pay during the term of the sentence.[6] Because, as we explain below, the statute does not limit a court's discretion to order restitution in that way, *Loutsch* is incorrect when it says the defendant's ability to pay during the sentence is what the statute requires the court to consider.[7] The portion

---

[5] *See, e.g., State v. Anthony D.,* 2006 WI App 218, ¶ 7 n.2, 296 Wis. 2d 771, 723 N.W.2d 775 ("This court has in one case interpreted [Wis. Stat. 973.20(13)(a)] to mean that a court may not order restitution in a *criminal* case that exceeds a defendant's ability to pay within the term of the sentence.").

[6] This interpretation is strengthened by the fact that the "during the sentence" phrase was repeated in the directions to the circuit court: "[W]e remand for the court to determine what amount of restitution it is reasonably probable that Loutsch will be able to pay during the term of his sentence." *Loutsch,* 259 Wis. 2d 901, ¶ 28.

[7] It is worth adding that this second issue was not raised by Loutsch in his briefs and was not the subject of any analysis by the court. Loutsch's briefs indicate that the restitution ordered was about $33,000, and his sentence included 54 months of extended supervision and 60 months of consecutive probation. The issue presented by a substantial restitution award and a relatively brief probation term was therefore not under consideration there. There is a substantial difference in the value of a statement based on "a deliberative consideration of the issue at hand" versus "[s]ub-silentio or assumptive resolution," as has been noted. *F.T.C. v. IFC Credit Corp.,* 543 F. Supp. 2d 925, 929 (N.D. Ill. 2008). As the Court of Appeals for the Seventh Circuit observed under similar circumstances, even where a court has apparently assumed a proposition, "[A]ssumptions are not holdings." *U.S. v. Rodriguez-Rodriguez,* 453 F.3d 458, 460 (7th Cir. 2006). *See also Brecht v. Abrahamson,* 507 U.S. 619, 631 (1993) ("[S]ince we have never squarely addressed the issue, and have at most assumed the applicability [of the standard in question], we are free to address the issue on the merits.").

of *Loutsch* that has been interpreted as limiting restitution in that manner is overruled.

¶ 6. That is bad news for the petitioner in this case, who relied on *Loutsch's* statement about restitution being limited to an amount payable during the sentence. Alberto Fernandez (Fernandez) appealed an order to pay $68,794 in restitution for damages and injury that he caused when he crashed a stolen car. He argues that the circuit court erred by ordering restitution in an amount greater than the amount he could pay during the term of his sentence.

¶ 7. Fernandez also challenged the restitution order on the grounds that some of the claims were submitted too late, violating the statute's requirements and, because he was not given advance written notice, his due process rights. He argues that the award of restitution to insurance companies is in violation of the statute, which allows such awards only where justice requires; he says justice does not require ordering a man who washes dishes for $5.15 an hour to pay restitution to insurance companies with a combined annual net income of $1.5 billion.

¶ 8. These additional claims all fall within the discretion of the circuit court because the statute permits adjournment of the restitution hearing and imposes no mandatory deadlines for claims to be made prior to a restitution hearing. It also permits courts to determine when awards are required by justice, and such discretionary rulings will not be disturbed on appeal unless they apply the wrong legal standard or are not based on a logical interpretation of the facts. Because the statute is written that way, and because the standard of review is highly deferential, we cannot say that the circuit court erred in adjourning the restitution hearing twice at the defendant's request and then

permitting testimony concerning claims for restitution made after sentencing (at least where, as here, the defendant had notice of the injuries at the time of sentencing). Nor do we find the court's order of full restitution to the insurance companies to be reversible error; it can be inferred from the court's ruling that it believed that justice required full restitution.

## I. BACKGROUND

¶ 9. The restitution award at issue in this case stems from damage and injuries Fernandez caused during a brief joyride on the night of June 16, 2005, when he became intoxicated at a friend's party, stole a car, and drove recklessly around a Fond du Lac railyard. One of the workers in the railyard, Bruce Dalka, had to dive out of the path of the oncoming car and in the process twisted his knee. That injury, which required months of medical care and resulted in lost wages, accounted for about $65,000 of the restitution ordered. The stolen car itself sustained relatively minor damage and accounted for about $3,400 of the restitution awarded.

¶ 10. At a hearing in Fond du Lac County Circuit Court on September 2, 2005, the Honorable Robert J. Wirtz presiding, Fernandez pled no contest to taking and driving a vehicle without consent in violation of Wis. Stat. § 943.23(2).[8] The court withheld sentence, and Fernandez was placed on probation for two years. Probation had various conditions, including restitution. The circuit court asked whether there was an agreement as to restitution or whether a separate restitution

---

[8] He also pled no contest to OWI/causing injury in violation of Wis. Stat. § 346.63(2)(a)1. On that charge he was sentenced to 60 days in jail, a one-year license revocation, a fine, and court costs.

hearing would be necessary. Defense counsel requested such a hearing, and one was scheduled for October 10, 2005, within the 60 days prescribed in Wis. Stat. § 973.20(13)(c)2.[9]

¶ 11. In the meantime, a judgment of conviction was entered on September 6, 2005. The judgment listed restitution as a condition of probation on the second charge. The judgment also noted that if any restitution remained unpaid at the end of the term of probation, "a civil judgment shall be entered for the balance due and/or other collection procedures will be implemented."

¶ 12. At the October 20, 2005, restitution hearing, MetLife Auto & Home Insurance Company (MetLife)[10] submitted a claim of $1,744.95 for additional work on the car.[11] Fernandez requested time to investigate the new claim. The court agreed that Fernandez "ought to have the opportunity to address that." The court proposed the date of January 10, 2006, saying, "My problem is I'm booked . . . and then I go into intake in December and I'm fitting this into post-intake as quick as I can." A moment later the court said again, "I just looked through my calendar. It's the only time I really have available. It's the soonest time I have available." Defense counsel twice replied, "Okay." The restitution hearing was continued to January 10, 2006, to allow defense counsel to investigate the additional claim. The

---

[9] We note that Wis. Stat. § 973.20(13)(c)2. expressly permits holding a separate restitution hearing; what was held to be prohibited in *Loutsch* was deferring a determination of a defendant's ability to pay until after he or she completes the in-custody portion of the sentence and begins probation or extended supervision. *Loutsch,* 259 Wis. 2d 901.

[10] MetLife was the insurer of the stolen car.

[11] An earlier claim for $1,680.72 had been submitted prior to sentencing.

adjournment was done in order to accommodate Fernandez's request for an opportunity to investigate further, and counsel made no objection to the January 10, 2006, date. The extension was permitted in order to ensure fairness, and it was in the court's discretion to do so.

¶ 13. At the continued restitution hearing on January 10, 2006, the circuit court agreed, over defense objection, to allow claims Canadian National Railroad (CNR), the self-insured employer[12] of Dalka, had submitted to the district attorney on December 9, 2005, with notice to defense counsel on December 16, 2005, for medical expenses and lost wages. The CNR claim submitted in December was for $22,313.56; by the time of the January hearing, the CNR claim had doubled to $44,808.60, and CNR was requesting an additional $20,000 in lost wages on Dalka's behalf. Dalka testified about his injury, medical care and lost wages, but there is nothing in the record indicating he ever submitted a restitution figure.

¶ 14. The circuit court heard telephone testimony from Fernandez about the factors listed in the statute relevant to this case: Fernandez's financial resources and his earning ability. Fernandez testified that he was 18, living with his mother in Texas, taking classes for a General Educational Development (GED) diploma, and working as a dishwasher for $5.15 per hour. He said he could afford to pay $50 to $70 a month.

¶ 15. The court found that if Fernandez quit his GED program and got a second job, he could afford $400 per month in restitution. The finding that Fernandez had the ability to make $400 monthly payments is not

[12] CNR's representative testified that CNR is self-insured and is subject to federal law but not to worker's compensation laws.

contested. The court ordered Fernandez to pay all the restitution requested by the two insurers, the car owner, and the injured worker, for a total of $68,794.27,[13] with payments of $400 per month to begin in February 2006. At the time, Fernandez's probation was set to terminate on September 2, 2007; there were 20 months remaining.[14]

¶ 16. An amended judgment of conviction filed on January 17, 2006, reflected the amount of restitution as $68,794.27 and directed Fernandez to pay $400 per month. A restitution order filed the same day listed the following victims and amounts: Margaret Roberts,[15]

---

[13] The court made no explicit finding on the record as to Fernandez's ability to pay the total amount of restitution. It would have been preferable for the circuit court to make a more complete and precise record that the court considered the defendant's ability to pay when it set the total restitution at $68,794; however, given the finding that $400 per month was within Fernandez's ability to pay—a finding that was not challenged—the court did not err in setting total restitution in an amount that, paid at least at that rate, would require 14 years to repay. In any event, Fernandez's challenge to the restitution award was not made on the grounds that the ability to pay was not considered.

[14] Before Fernandez's probation expired, a petition and stipulation were filed with the court to extend probation. On May 24, 2007, the circuit court ordered that probation be extended by two years to September 2, 2009. In the petition Fernandez stated that the restitution was being appealed, and he waived the right to a hearing on the matter of extending probation. The petition stated, "I understand that the Dept. of Corrections believes I have not made a good faith effort to pay and is asking the court to: extend my probation for 2 years, 0 months." Documentation attached to the petition showed that, as of May 21, 2007, no payments had been made toward court costs or restitution. The extension of probation is not contested in this appeal.

[15] Roberts was the owner of the stolen car.

$250.00; MetLife, $3,175.67; Dalka, $20,560.00; and CNR, $44,808.60.

¶ 17. At a post-conviction motion hearing, Fernandez challenged the restitution on the same grounds that he now argues before this court. He asked that the court:

- Reduce the total restitution to the maximum amount, at the rate the court determined he had the ability to pay each month ($400), that could be paid during the term of his probation.[16]

- Vacate the order for restitution to Dalka and CNR because (1) the claims for restitution for these victims were barred because they were not made at the time of sentencing; and (2) at the time of sentencing, Fernandez had not had notice that there would be claims from these victims.

- Vacate the order for restitution to Dalka because Fernandez had no notice of the claim because Dalka neither explicitly requested restitution nor provided any documentation of his claim.[17]

- Vacate the order for restitution to MetLife and to CNR in its capacity as the insurer for Dalka. Wis. Stat. § 973.20(5)(d) authorizes reimbursement to insurance companies if justice requires, but Fernandez argued that justice does not require it here given the disparity between the insurance companies' wealth and Fernandez's poverty.

---

[16] The maximum restitution is referred to as $9,600 in the post-conviction motion, assuming a 24-month probation period. In the briefs on appeal, the maximum amount is referred to as $8,000, which recognizes that by the time of the restitution hearing, four months of probation had already passed and 20 months remained.

[17] Fernandez also alleged that there was not proof by a preponderance of the evidence to support the restitution order. He did not pursue that argument on appeal.

¶ 18. The circuit court denied the motion to limit the ordered restitution to what was payable during probation, stating, "[u]ltimately, what [Fernandez] owes in restitution may be a more significant amount to compensate the victims [than he can pay over the course of probation]." The circuit court cited *Huml v. Vlazny*, 2006 WI 87, 293 Wis. 2d 169, 716 N.W.2d 807, which dealt with another question but acknowledged without disapproval a restitution award that exceeded the amount the defendant had the ability to pay during the term of probation.[18] The circuit court said the arguments about notice were unpersuasive because first, the request came in before the restitution hearing had concluded and restitution had been ordered, and second, Fernandez knew about the man he injured and therefore had notice that other claims were possible.

¶ 19. Fernandez appealed; as noted above, the court of appeals certified the appeal to this court.

## II. STANDARD OF REVIEW

¶ 20. Here we review both the interpretation of the restitution statute and its application to a given set of facts, which presents a question of law and is reviewed de novo. *See, e.g., State v. Sweat*, 208 Wis. 2d

---

[18] *Huml* dealt with the effect of a settlement agreement on a restitution order. What courts have observed is the apparent contradiction between *Loutsch* and the facts of *Huml*. Restitution in the underlying criminal case there had been set at $140,000; payments were ordered at $425 per month; and three years' probation was initially imposed. As this court noted without further comment, a substantial amount of restitution would have remained outstanding after probation was terminated. *Huml v. Vlazny*, 2006 WI 87, ¶¶ 7–8, 293 Wis. 2d 169, 716 N.W.2d 807.

409, 561 N.W.2d 695 (1997). Reviewing the calculation of restitution involves a question of whether the trial court misused its discretionary authority. *State v. Boffer,* 158 Wis. 2d 655, 658, 462 N.W.2d 906, 907–08 (Ct. App. 1990). This court may reverse a discretionary decision if the trial court applied the wrong legal standard or did not ground its decision on a logical interpretation of the facts. *See State v. Behnke,* 203 Wis. 2d 43, 58, 553 N.W.2d 265 (Ct. App. 1996); *State v. Rogers,* 196 Wis. 2d 817, 829, 539 N.W.2d 897 (Ct. App. 1995).

## III. DISCUSSION

¶ 21. Because Fernandez would have us interpret the statute as imposing a limit on the amount of restitution a court can order, we begin by noting that full or partial restitution is mandatory under the statute "unless the court finds substantial reason not to do so and states the reason on the record."[19]

---

[19] Wisconsin Stat. § 973.20(1r):

When imposing sentence or ordering probation for any crime, other than a crime involving conduct that constitutes domestic abuse under s. 813.12(1)(am) or 968.075(1)(a), for which the defendant was convicted, the court, in addition to any other penalty authorized by law, shall order the defendant to make full or partial restitution under this section to any victim of a crime considered at sentencing or, if the victim is deceased, to his or her estate, unless the court finds substantial reason not to do so and states the reason on the record. . . . Restitution ordered under this section is a condition of probation, extended supervision, or parole served by the defendant for a crime for which the defendant was convicted. After the termination of probation, extended supervision, or parole, or if the defendant is not placed on probation, extended supervision, or parole, restitution ordered under this section is enforceable in the same manner as a judgment in a civil action by the victim named in the order to receive restitution or enforced under ch. 785.

*See also* Wis. Stat. § 973.09(1)(b).

¶ 22. The statute also makes it mandatory, without exception, for a sentencing court to consider specific facts in arriving at a decision on a restitution order.[20] Three of the factors the court "shall consider" are related to the defendant's financial situation: the financial resources of the defendant, the present and future earning ability of the defendant, and the needs and earning ability of the defendant's dependents.[21]

¶ 23. Our case law has repeatedly stressed the necessity of considering a defendant's ability to pay when ordering restitution. In *Huggett v. State*, 83 Wis. 2d 790, 266 N.W.2d 403 (1978), this court addressed a situation where a defendant had her probation extended for continued payment of restitution even though she had initially made a good faith effort by making some payments and lacked the capacity to keep

---

[20] Wisconsin Stat. § 973.20(13)(a):

The court, in determining whether to order restitution and the amount thereof, shall consider all of the following:

1. The amount of loss suffered by any victim as a result of a crime considered at sentencing.

2. The financial resources of the defendant.

3. The present and future earning ability of the defendant.

4. The needs and earning ability of the defendant's dependents.

5. Any other factors which the court deems appropriate.

[21] Fernandez argues that in requiring a court to consider these factors the legislature was capping the total amount that can be ordered at an amount within the ability to pay, and given the language in Wis. Stat. § 973.20(10), it was capping the amount at the ability to pay within the term of the sentence. Given the provision in § 973.20(1r) for converting any unpaid balance of restitution to a civil judgment, which we discuss at ¶¶ 47–48 below, we disagree that these factors constitute such a cap.

up with the payments.[22] This court remanded for a new probation revocation hearing on the grounds that extending probation solely for nonpayment of restitution was not permissible where the defendant had made a good faith effort but did not have the ability to pay the amount ordered:

> If the probationer lacks the capacity to pay and has demonstrated a good faith effort during probation, failure to make restitution cannot be "cause" for extending probation. As we have noted previously, the criminal justice system should not be employed to supplement a civil suit or as a threat to coerce the payment of a civil liability or to perform the functions of a collection agency.

*Id.* at 803–04 (citing *State v. Scherr,* 9 Wis. 2d 418, 424, 101 N.W.2d 77 (1960)).

¶ 24. The rationale for the rule we emphasized in *Huggett* was that absent a meaningful determination of the defendant's ability to pay, restitution loses a large part of its significance.

> Conditioning probation on making restitution also protects the community's interest in having the victims of crime made whole. However, conditioning probation on the satisfaction of requirements which are beyond the probationer's control undermines the probationer's sense of responsibility.

---

[22] As noted above, the extension of Fernandez's probation by two years is not contested; it was stipulated to the circuit court that the requirement of a good faith effort had not been met, and therefore *Huggett v. State,* 83 Wis. 2d 790, 266 N.W.2d 403 (1978), does not apply to that determination. We cite *Huggett* because it makes clear that the defendant's ability to pay is a relevant factor and articulates some of the policy concerns surrounding restitution.

614

We have previously emphasized the importance of the trial court's determining a probationer's ability to pay in imposing restitution.

*Huggett,* 83 Wis. 2d at 798–99, 800.

¶ 25. In *Sweat,* 208 Wis. 2d 409, this court again recognized that part of the purpose of restitution is for the benefit of the defendant, another indication that the defendant's circumstances are not incidental to the setting of restitution. *Id.* at 422 ("Restitution serves a dual purpose, making the victim whole and rehabilitating the defendant.")

¶ 26. In considering the defendant's ability to pay, courts may consider external legal realities as well, such as the fact that a restitution order is not dischargeable in bankruptcy. *State v. Foley,* 142 Wis. 2d 331, 417 N.W.2d 920 (Ct. App. 1987).[23]

¶ 27. Fernandez contends, however, that there is essentially another consideration that the court is required to make; that is, where probation is ordered, the

---

[23] There the court held that "[t]he trial court correctly concluded that it could require, as a condition of Foley's probation, that he make restitution to the victims of his crime even though his civil liability to them had been discharged in bankruptcy. Because the federal bankruptcy courts defer to the sovereignty of the state in criminal prosecutions, the restitution order does not violate the supremacy clause of the federal constitution." *State v. Foley,* 142 Wis. 2d 331, 341–42, 417 N.W.2d 920 (Ct. App. 1987) (citing *Kelly v. Robinson,* 479 U.S. 36, 37 (1986) (declining to permit the discharge in bankruptcy of restitution ordered in a criminal case citing "the deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings")).

statute caps restitution at the amount that the defendant has the ability to pay within the period of probation.

¶ 28. It is true that Fernandez can cite to some language in the statute that, at first glance, seems to support his position. First, the statute describes three restitution payment plans, so to speak, that are within a court's discretion to order: "immediately, within a specified period or in specified installments." Wis. Stat. § 973.20(10). Only the second one, the "within a specified period" option, is further qualified. It is qualified in the next sentence: "If the defendant is placed on probation or sentenced to imprisonment, the end of a specified period shall not be later than the end of any period of probation, extended supervision or parole." *Id.* One way to reconcile this part of the statute with the other sections would be to limit all restitution orders in circumstances like Fernandez's to an amount that can be imposed, taking into consideration what he has the ability to pay during the term of his probation.

¶ 29. A second part of Wis. Stat. § 973.20(1r) that seems to support Fernandez's argument is the statement that "[r]estitution ordered under this section is a condition of probation, extended supervision, or parole"—a statement that can technically be true only insofar as it is talking about the restitution that is being paid by the defendant during probation.

¶ 30. The result of such technical or superficial reading of the statute, however, would be to read into the language a substantial limitation that contravenes all of the surrounding language, which repeatedly stresses the discretion of the court in making a decision about restitution and emphasizes that, with rare exceptions, either partial or full restitution is mandatory. Such a

reading also is grounded on several assumptions that, as we explain below, unravel in a careful reading of the statute.

¶ 31. As the court of appeals noted, *Loutsch* has been read as holding what Fernandez urges. In fact, the *Loutsch* court actually stated an even broader rule. *Loutsch* referred to determining the amount a defendant had the ability to pay "before the completion of the *sentence*" and, elsewhere, "during the term of his *sentence*." *Loutsch,* 259 Wis. 2d 901, ¶¶ 25, 28 (emphasis added).

¶ 32. One can arrive at such a rule only by failing to observe distinctions made by the three sentences of Wis. Stat. § 973.20(10). The first sentence lists three options available for repayment: a court may require a defendant to pay "immediately," "within a specified period," or "in specified installments."

¶ 33. *Loutsch* and Fernandez then read the second sentence ("[i]f the defendant is placed on probation . . . the end of the specified period shall not be later than the end of any period of probation . . .")[24] and assume that probation is the equivalent of the second payment plan. Such an assumption is incorrect. The statute presents no barrier to a court's ordering immediate payment (the first option) and imposing probation; for that matter, the circuit court could (as it arguably did in Fernandez's case) require that the payment plan be the third option, "in specified installments." Fernandez was told to pay $400 a month, which is a specified installment. In either of these two sce-

---

[24] The sentence also mentions extended supervision and parole, but for simplicity's sake, we'll focus on probation because that is what is relevant here.

narios, there is no further limitation created by the statute.

¶ 34. Nevertheless, *Loutsch* reads that second sentence together with the third sentence, which involves a scenario not implicated here: the intensive sanctions program. Where that program is part of the sentence, "the end of the specified period shall not be later than the end of the sentence under [the intensive sanctions program statute]." Wis. Stat. § 973.20(10).

¶ 35. To craft the rule that *Loutsch* has been interpreted to create, one has to start with the assumption that the payment plan chosen is the "within a specified period" option; add to that the assumption that placing a defendant on probation automatically puts him or her on the "within a specified period" plan; and proceed to the inference that when probation is imposed and the "within a specified period" concept comes into play, the total ordered restitution must be paid before the end of probation. Even more mischief is done by conflating "the end of the sentence" language relating to the intensive sanctions program with "the end of any period of probation." Jumbling concepts from the three sentences together and adding in the ability to pay analysis from Wis. Stat. § 973.20(13), one arrives at the argued-for rule: a court must determine how much the defendant will be able to pay before the completion of the sentence.

¶ 36. It is easy to see how the *Loutsch* rule would sharply curtail the court's discretion to determine how much restitution to order. The "before the end of the sentence" rule, as applied here, would limit restitution to under $10,000 while the damages were six times that amount; in other cases the results could be even more drastic. Where a six-month jail term was imposed, for example, restitution would be capped at what the

defendant could pay during the term of the jail sentence; where that time is served in custody as opposed to with Huber or work-release privileges, the practical effect would be no recoverable restitution at all.

¶ 37. Adopting such a rule might well create incentives to increase the length of probation ordered, as well. We have already stated the principle that using probation for that purpose is improper,[25] and others, such as the Judicial Council Committee, have alluded to the fact that doing so is a poor use of scarce resources.[26]

¶ 38. As we noted above, however, the court of appeals in *Loutsch* was addressing a different question altogether—whether a court could delay making a determination of a defendant's ability to pay until a later point when he completed a prison sentence and began a period of extended supervision. The confusion that has arisen in connection with *Loutsch* is a result of its rephrasing of one part of the statute that is entirely unrelated to the facts presented in that case. Loutsch was not asking to have his restitution limited to payments during his probation period; he was concerned with *when* the determination of ability to pay was to be considered.

¶ 39. In any event, the State argues that the *Loutsch* court was incorrect in stating that restitution must be limited to the defendants' ability to pay within the term of the sentence. It argues that the statute does

---

[25] *Huggett,* 83 Wis. 2d at 803–04.

[26] "The availability of a civil judgment for unpaid restitution enforceable by the victim under s. 973.20(1), stats., substantially reduces the necessity of extending probation solely for the purpose of enforcing court-ordered payments, a practice of questionable cost-effectiveness." Judicial Council Committee Note, 1987, Wis. Stat. § 973.09 (quoted in *Huml,* 293 Wis. 2d 169, ¶ 27).

619

not unambiguously require such a rule. The State further argues that such an interpretation is contrary to the legislative history and public policy, and is inconsistent with other provisions in the statute that clearly provide for unpaid portions of the restitution to be converted to a civil judgment.

¶ 40. We agree with the State. If we were to read the statute the way Fernandez urges, it would function as a cap to the amount of restitution a court is permitted to order. It would also mean that courts would be put in the position of having to choose between providing restitution to some victims and utilizing probation because the maximum in restitution would depend on whether probation was imposed. In a case where restitution is requested in the amount of $15,000, for example, what the victims could recover would turn solely on whether the defendant was placed on probation. If the defendant in that hypothetical had the ability to pay $5,000 per year in restitution, and was sentenced to a fine or period of time in jail but no probation, a court might well set restitution at the full $15,000. Under Fernandez's reading of the statute, if that same defendant were instead sentenced to a period of jail time and a year of probation, the amount of restitution would be capped at $5,000—the amount the defendant had the ability to pay during the term of the sentence. We decline to endorse a rule that creates differences in the amount of restitution awarded in cases where the sole difference is whether a circuit court utilizes probation, because in the context of the statute there is no indication that the language means that. It would be an odd distinction to make anyway: after any conditional jail time[27] is served, a person on probation is as free to work as a person not on

---

[27] Wisconsin Stat. § 973.09(4)(a):

probation (subject, of course, to any terms of probation). There is no logical reason for the statute to limit the court's discretion in one case and not in the other.

¶ 41. In addition, while there is necessarily some overlap between the payment of restitution and probation terms in cases where probation is ordered, the two are independent determinations. Reading the statute the way Fernandez urges would mean that probation essentially determines the maximum amount that can be set in restitution and would rewrite the "ability to pay" consideration to become the "ability to pay within the period of time of probation," a provision that the statute does not have but that Fernandez wishes us to read in. Fernandez's counsel was asked at oral argument where in the statute's legislative history there was any indication that what the circuit court did here was improper. Counsel conceded, "There are no sentences that say, 'Ability to pay means during the term of probation or sentence.' " Creating such an arbitrary cap on restitution does not fit with the rest of the statute.

¶ 42. Fernandez also argues that the Judicial Council Note following the statute notes the similarity between Wis. Stat. § 920.73(13)(a) and a previous statute: "Prior s. 973.09(1m)(a), stats., similarly required the court to consider the defendant's ability to pay when determining the amount of restitution." Judicial Council Note, 1987, Wis. Stat. § 973.20. Even if, in the prior statute, "ability to pay" was understood to mean "ability

The court may also require as a condition of probation that the probationer be confined during such period of the term of probation as the court prescribes, but not to exceed one year. The court may grant the privilege of leaving the county jail, Huber facility, work camp, or tribal jail during the hours or periods of employment or other activity under s. 303.08(1) while confined under this subsection.

to pay within the probation or sentence term," as counsel argued it was, such a tenuous link can hardly support the conclusion that this statute must be so construed.

¶ 43. When this court discussed the restitution statute in *Huml,* we noted, "Simplifying the procedure by which a victim obtains a judgment to enforce unpaid restitution is entirely consistent with the overarching purposes of the legislation: to promote the dignity of crime victims, to maximize the respect afforded victims by the criminal justice system, and to increase the amount of restitution recovered." *Huml,* 293 Wis. 2d 169, ¶ 34.

¶ 44. The same principle applies in the context of this question. The legislature forcefully affirmed the rights of victims to recover under this statute the costs they incurred from another's criminal conduct. That endorsement is powerfully underscored by the Wisconsin electorate, which in 1993 adopted the following language when it voted overwhelmingly in favor of amending the Wisconsin Constitution:

> This state shall treat crime victims, as defined by law, with fairness, dignity and respect for their privacy. This state shall ensure that crime victims have all of the following privileges and protections as provided by law: timely disposition of the case; the opportunity to attend court proceedings unless the trial court finds sequestration is necessary to a fair trial for the defendant; reasonable protection from the accused throughout the criminal justice process; notification of court proceedings; the opportunity to confer with the prosecution; the opportunity to make a statement to the court at disposition; *restitution; compensation;* and information about the outcome of the case and the release of the accused. . . .

Wis. Const. art. I, § 9m (emphasis added).

¶ 45. Wisconsin Stat. § 973.20 presents no inconsistency with those principles; the problems created by Fernandez's interpretation resolve themselves when the language is read in context. *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. "Context is important to meaning. So, too, is the structure of the statute in which the operative language appears." *Id.* "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.* When we look at the other key language there are several indications that the State's interpretation is correct, since it is the more reasonable one.

¶ 46. The fact that restitution is provided "in addition to any other penalty authorized by law" (Wis. Stat. § 973.20(1r)) lends support to the view that restitution was viewed by the legislature as a distinct penalty and suggests that in the absence of any indication in the statute that restitution is intended to limit the sentence or the sentence is intended to limit restitution, we should not infer such limitations.

¶ 47. In fact, it is significant that in providing for converting unpaid restitution to civil judgments,[28] the legislature, it seems clear, recognized that there would be circumstances where all the necessary restitution amounts often would not and could not be paid before the completion of the sentence or probationary period.

---

[28] Wisconsin Stat. § 973.20(1r):

After the termination of probation, extended supervision, or parole, or if the defendant is not placed on probation, extended supervision, or parole, restitution ordered under this section is enforceable in the same manner as a judgment in a civil action by the victim named in the order to receive restitution or enforced under ch. 785.

¶ 48. This reading of the statute is consistent with our statement in *Huml,* distinguishing the purposes of probation from the collection of restitution: *"Davis . . .* stands for the proposition that once the penal and rehabilitative purposes of restitution have been served, only a civil debt remains." *Huml,* 293 Wis. 2d 169, ¶ 43. This court went on to add:

> It is true that restitution in a criminal case is a remedy that belongs to the state, not to the victim. Termination of probation, however, signals the state's disavowal of any penal or rehabilitative interests. Thereafter, only the goal of compensating the victim remains. This is an objective adequately accomplished by entry of a civil judgment, which can be enforced through civil enforcement mechanisms.

*Id.,* ¶ 44 (citations omitted).

¶ 49. In short, we do not read a line or two in the statute to create a restriction as great as the one that would be created by Fernandez's rule where the evidence in the surrounding text of the statute is to the contrary.

## IV. FERNANDEZ'S OTHER CLAIMS

¶ 50. As noted above, orders of restitution are within the discretion of the circuit court, and because it is dispositive of the other claims Fernandez makes, we revisit the standard of review before addressing Fernandez's additional claims. Reviewing a calculation of restitution involves a question of whether the circuit court misused its discretionary authority. *Boffer,* 158 Wis. 2d at 658. This court may reverse a discretionary decision if the circuit court applied the wrong legal standard or did not ground its decision on a logical interpretation of the facts. *See Behnke,* 203 Wis. 2d 43; *Rogers,* 196 Wis. 2d 817.

¶ 51. Fernandez argues that the circuit court had no authority under the statute to consider claims submitted by Dalka and CNR after the time of sentencing or, in the alternative, that for equitable reasons those claims should not have been considered.

¶ 52. The State counters that there is no language in the statute that requires victim claims to be submitted before sentencing. The State also argues that where restitution was held open, there is no expectation of finality and thus no equitable grounds for denying the claims.

¶ 53. While Wis. Stat. § 973.20(13)(c) provides the right for a defendant to dispute claims of losses, it does not set any explicit deadlines for victims' claims. Recognizing the unique nature of the restitution process, the statute imposes only limited duties on district attorneys, requiring them to "attempt to obtain from the victim prior to sentencing information pertaining to the factor specified [as to the amount of loss suffered],"[29] and on a court, requiring the court to "inquire

---

[29] Wisconsin Stat. 973.20(13):

(b) The district attorney shall attempt to obtain from the victim prior to sentencing information pertaining to the factor specified in par. (a)1. Law enforcement agencies, the department of corrections and any agency providing services under ch. 950 shall extend full cooperation and assistance to the district attorney in discharging this responsibility. The department of justice shall provide technical assistance to district attorneys in this regard and develop model forms and procedures for collecting and documenting this information.

(c) The court, before imposing sentence or ordering probation, shall inquire of the district attorney regarding the amount of restitution, if any, that the victim claims. The court shall give the defendant the opportunity to stipulate to the restitution claimed by the victim and to present evidence and arguments on the factors specified in par. (a). If the defendant stipulates to the restitution claimed by the victim or if any restitution dispute can

of the district attorney" as to any claims for restitution from any victims.

¶ 54. There is no language in the statute that prohibits the consideration of claims presented before the restitution hearing occurred, which is when Dalka's and CNR's claims were presented. Where, as here, Fernandez had notice of Dalka's injuries (and therefore of those of his insurer, CNR) because Fernandez knew that Dalka had been hurt, there was no expectation of finality at a sentencing hearing when restitution was ordered in an amount to be determined. Even if Fernandez somehow was unaware of the injuries on the night of the crash, the complaint included information on Dalka's being taken by ambulance to the hospital and being told by a doctor that he had torn ligaments in his left knee.

¶ 55. The circuit court's first scheduling of the restitution hearing was entirely in accord with the statute, which provides that at sentencing the court can "[a]djourn the sentencing proceeding for up to 60 days pending resolution of the amount of restitution by the court, referee or arbitrator." Wis. Stat. § 973.20(13)(c)2. Both the first and second hearing dates were approved by trial counsel; it was at the defendant's request that

---

be fairly heard at the sentencing proceeding, the court shall determine the amount of restitution before imposing sentence or ordering probation. In other cases, the court may do any of the following:

1. Order restitution of amounts not in dispute as part of the sentence or probation order imposed and direct the appropriate agency to file a proposed restitution order with the court within 90 days thereafter, and mail or deliver copies of the proposed order to the victim, district attorney, defendant and defense counsel.

2. Adjourn the sentencing proceeding for up to 60 days pending resolution of the amount of restitution by the court, referee or arbitrator.

the hearing was adjourned, and it was with counsel's acquiescence that the January 10, 2006, hearing was scheduled.

¶ 56. When the court of appeals addressed the timelines in the restitution statute in *State v. Perry,* 181 Wis. 2d 43, 510 N.W.2d 722 (Ct. App. 1993), it held that the timelines in the statute are "directory" rather than mandatory:

> It is important to note that our conclusion that the sixty-day time period in sec. 973.20(13)(c)2, Stats., is directory should not be read to imply that the provision is merely discretionary or permissive. The legislature intended that the time limit be followed, despite its intent that the defendant not avoid his or her obligation to pay restitution. Our determination that the provision is directory simply reflects that the legislature did not intend that the court be required in all cases to vacate the restitution order for a violation of the statutory time limitation.

*Id.* at 56–57.

█

¶ 57. The *Perry* court noted that restitution hearings might be barred in some circumstances if they fell outside the statutory time period of sixty days; that would be true if it "would result in an injury or wrong." *Id.* at 57. We concur with the reasoning of the *Perry* court that given the tenor of the statute and the broad discretion granted to the circuit court under Wis. Stat. § 973.20(14)(c) and (d),[30] the statute's timelines are directory. Fernandez has shown no injury from the fact

---

[30] Wisconsin Stat. § 973.20(14):

At any hearing under sub. (13), all of the following apply:

. . . .

that the restitution hearing was held outside of the time period considering that the delay of the restitution hearing was done at his own request for the purpose of allowing him to validate a claim of restitution. The circuit court explicitly noted that it made the decision to permit the restitution hearing to be adjourned "in fairness." It is clear from the record that the delay in scheduling the requested adjournment was caused by understandable court calendaring issues, and it is equally clear that Fernandez was not injured by the delay he sought here, except that when he asked for the additional time, he opened the door for additional claims to be submitted before the hearing concluded.

■

¶ 58. In light of the open-ended language of the statute and the court of appeals' holding in *Perry*, there is no error at least where the claims are made before the hearing is concluded and restitution is ordered, as the claims were here. Fernandez cannot show, under the

(c) The burden of demonstrating, by the preponderance of the evidence, such other matters as the court deems appropriate is on the party designated by the court, as justice requires.

(d) All parties interested in the matter shall have an opportunity to be heard, personally or through counsel, to present evidence and to cross-examine witnesses called by other parties. The court, arbitrator or referee shall conduct the proceeding so as to do substantial justice between the parties according to the rules of substantive law and may waive the rules of practice, procedure, pleading or evidence, except provisions relating to privileged communications and personal transactions or communication with a decedent or mentally ill person or to admissibility under s. 901.05. Discovery is not available except for good cause shown. If the defendant is incarcerated, he or she may participate by telephone under s. 807.13 unless the court issues a writ or subpoena compelling the defendant to appear in person.

statute or under the case law, that the trial court erred in considering claims made before the restitution order was entered.

¶ 59. Fernandez additionally argues that the lack of advance written notice of the Dalka and CNR claims violated his due process rights. In response, the State contends that Fernandez's due process rights were protected by the statute, which provides for "an opportunity to be heard, personally or through counsel, to present evidence and to cross-examine witnesses called by other parties." Wis. Stat. § 973.20(14)(d).

¶ 60. We agree with the State. The statute leaves it to the court to "conduct the proceeding so as to do substantial justice between the parties according to the rules of substantive law and may waive the rules of practice, procedure, pleading or evidence . . . ." *Id.* The statute explicitly notes that "[d]iscovery is not available except for good cause shown. . . ." *Id.* Here, Fernandez was given the opportunity to have counsel challenge the claims presented and to cross-examine the witnesses. Given the aims of the restitution statute—to balance the needs of the victim to recover losses without complicated legal barriers against the needs of the defendant to ascertain the validity of the claims—the legislature clearly elected to give the circuit court a great deal of discretion in conducting a restitution hearing. We should not impose arbitrary deadlines where the legislature has not done so and where the defendant had a full opportunity to challenge the claims.

¶ 61. Fernandez says the court erred by ordering full restitution to two insurance companies because a court is authorized to do so only where justice requires. Fernandez says that justice does not require a man who washes dishes for a living to reimburse insurance

companies worth billions of dollars. The State points out that restitution is a discretionary decision of the circuit court and that the statute permits restitution to insurance companies.[31]

¶ 62. It is within the court's discretion to award restitution to insurers. Evidence was submitted as to the costs which both insurers had borne for the victims.[32] The circuit court appears to have applied the correct legal standard and to have arrived at a logical interpretation of the facts in ordering restitution from Fernandez. The defendant's ability to pay was clearly considered by the circuit court. Such an award should not be reversed. There is no evidence that the court applied the wrong legal standard or did not ground its decision on a logical interpretation of the facts when it decided justice required reimbursing an insurer who has compensated a victim for a loss.

## V. CONCLUSION

¶ 63. On the question involving restitution ordered during a sentence or probation term, we hold that the statute, when read as a whole, clearly permits a

---

[31] "[T]he restitution order may require that the defendant do one or more of the following: ... If justice so requires, reimburse any insurer, surety or other person who has compensated a victim for a loss otherwise compensable under this section." Wis. Stat. § 973.20(5)(d).

[32] Having found that the two insurance companies were also "victims" that "paid money," the circuit court was clearly making a determination that justice required restitution to those companies. The circuit court followed up those findings with an order requiring restitution to them for the sums the court found that they had paid. The findings of the circuit court are supported by the record before us.

circuit court to order full restitution so long as it properly considers the defendant's ability to pay in setting the total restitution and, where applicable, in setting the amount that must be paid during any probation, parole, or extended supervision. The statute gives no indication that that power is curtailed when probation is involved. In fact, it is significant that in providing for converting unpaid restitution to civil judgments, it seems clear that the legislature recognized that there would be circumstances where all the necessary restitution amounts often would not and could not be paid before the completion of the sentence or probationary period.

¶ 64. We therefore answer the certification from the court of appeals by holding that when a court has considered the defendant's ability to pay in setting restitution, the length of the term of probation or of the sentence does not have any limiting effect on the total amount of restitution that may be ordered. Here the circuit court considered the defendant's ability to pay in ordering restitution, as the statute requires, and because the circuit court did not err in considering all the evidence presented at the restitution hearing or in awarding restitution to the victims in accord with the statute, we affirm the circuit court's order.

*By the Court.*—The order of the circuit court is affirmed.

¶ 65. ANN WALSH BRADLEY, J. (*dissenting*). The majority opinion aptly sets forth the law with regard to restitution owed to victims of a crime. I part ways with the majority when it, like the circuit court, fails to recognize that Wis. Stat. § 973.20(5)(d) requires that the court distinguish between crime victims and insurers. The statute provides that the sentencing court

must order restitution to crime victims. However, an order for restitution to an insurer is discretionary, and is to be awarded only "[i]f justice so requires."[1]

¶ 66. Rather than requiring adherence to the plain language of the statute, the majority looks the other way and concludes that the circuit court "appears to have applied the correct legal standard." Here, there was no application whatsoever of the "if justice so requires" standard. A review of the record reveals that the circuit court's only articulated standard was: "they paid money." Because the circuit court's determination contravenes the plain language of the statute, its history, and its purposes, I respectfully dissent.

¶ 67. In this case, the circuit court ordered $44,808.60 in restitution to Canadian National and $3,175.67 in restitution to Met Life, both insurers. The majority opinion dispenses with its analysis of whether the circuit court properly exercised its discretion in two paragraphs. It reports that the circuit court "appears to have applied the correct legal standard." Majority op., ¶ 62. The opinion then concludes, "There is no evidence that the court applied the wrong legal standard or did not ground its decision on a logical interpretation of the facts when it decided justice required reimbursing an insurer who has compensated a victim for a loss." *Id.*

¶ 68. The circuit court, however, never made a determination that justice required reimbursing the

---

[1] There may also be defects in the circuit court's determination of Fernandez's ability to pay. Based on the sparse record made by the circuit court, this court struggled in its review. *See* majority op., ¶ 15, n.13 ("It would have been preferable for the circuit court to make a more complete and precise record[.]"). I write separately, however, to note that the statute provides different standards for ordering restitution to crime victims and to insurers.

insurers. Rather, it tallied all the claims without distinguishing the claims made by the insurers from the claims made by the victims of the crime: "So, we have three parties[2] out close to seventy thousand dollars, and rising, and I would find that they are all victims." Defense counsel objected to the circuit court lumping the insurance companies together with the victims and making no distinction between the two. The circuit court's sole response and analysis justifying the award was set forth in three words: "They paid money."

> Defense counsel: Your Honor, then I would further object to Canadian National being allowed to proceed with the claim in this case because, certainly, 973.20 authorizes payment of restitution to a victim, but I do not believe that Canadian National can be construed as a victim in this case.

> The Court: They paid money.

The circuit court simply concluded that because the insurers "paid money," they were victims entitled to restitution.

¶ 69. The restitution statute, however, explicitly distinguishes between victims of crime and those who compensate the victims' losses. Section 973.20(1r) states that "the court . . . *shall order* the defendant to make full or partial restitution . . . *to any victim of a crime* considered at sentencing[.]" (Emphasis added.) In contrast, the court *"may require"* reimbursement to *"any insurer,* surety or other person *who has compensated a victim* for a loss otherwise compensable under this section" *"[i]f justice so requires."* Wis. Stat. §§ 973.20(5), (5)(d) (emphasis added).

---

[2] There were actually four parties that presented restitution claims: Roberts, Met Life (Roberts's insurer), Dalka, and Canadian National (Dalka's insurer).

¶ 70. On its face, the statute differentiates between victims and those who have compensated a victim. A court may order restitution to an insurer "if justice so requires." This marks a change from prior law, which did not require the court to determine that justice required restitution to an insurance company.[3]

¶ 71. This policy choice is reflected in the legislative history of the statute. Wisconsin's restitution statutes were significantly overhauled by 1987 Wisconsin Act 398 and 1989 Wisconsin Act 188, which added provisions intended to protect crime victims. To that end, the amendments made district attorneys responsible for gathering information about victim losses and presenting that information to the sentencing court. *See* Wis. Stat. §§ 973.20(13)(b), (c) (1987–88). The amendments provided that the sentencing court "shall order" restitution "to any victim of the crime or, if that person is deceased, to his or her estate" regardless of whether the defendant was incarcerated or placed on probation.[4] *See* Wis. Stat. § 973.20(1) (1987–88). In addition, the amendments allowed unpaid restitution to be converted to a civil judgment when the defendant was released from probation or parole, or immediately if neither probation nor a prison sentence was im-

---

[3] *See* Wis. Stat. § 973.09(1)(b) (1985–86) ("If the court places the person on probation, the court shall require restitution designed to compensate the victim's pecuniary loss resulting from the crime to the extent possible. . . . A court may require that restitution be paid to an insurer or surety which has paid any claims or benefits to or on behalf of the victim.")

[4] With minor exceptions, the prior statutes permitted restitution only when the defendant was placed on probation. Thus, the sentencing court was required to choose between incarceration and restitution for the benefit of victims.

posed.[5] *See id.*; *see also* Wis. Stat. § 973.20(1) (1989–90) (providing that restitution "is enforceable in the same manner as a judgment in a civil action").

¶ 72. Collectively, the amendments made it easier for victims to be compensated for their losses without undergoing civil litigation.[6] This legislative purpose is also reflected in Wis. Stat. Ch. 950, Rights of Victims and Witnesses of Crime, which provides that a crime victim has a right to restitution and to a judgment against the defendant for unpaid restitution. *See* Wis. Stat. §§ 950.04(1v)(q), (r).

¶ 73. At the same time, the legislature inserted the directive that a court determine whether "justice so requires" when ordering restitution to "an insurer, surety or other person who has compensated a victim for a loss[.]" *Compare* Wis. Stat. § 973.20(5)(d) (1987–88) *and* Wis. Stat. § 973.09(1)(b) (1985–86). The amendments also required that restitution to victims be paid before

---

[5] Under prior statutes, release from probation extinguished the obligation to pay restitution. *See Huggett v. State,* 83 Wis. 2d 790, 266 N.W.2d 403 (1978).

[6] *See* Testimony of Senator Barbara Ulichny before the Senate Judiciary and Consumer Affairs Committee, January 9, 1990 ("Crime victims experience many losses, many of which, such as a sense of personal safety or physical health, can never be replaced. One loss that can be measured and alleviated, however, is economic loss. Requiring offenders to make restitution can help victims recover property damages, medical bills, lost wages, and other expenses.") (on file in the Records of the Judicial Council, Wisconsin State Law Library, Madison, WI); *see also* Testimony of Richard H. Anderson, Director, Office of Crime Victim Services, January 9, 1990 ("This bill extends to crime victims the right to at least attempt to collect the restitution which has been awarded, without the additional cost of filing a separate civil action.") (on file in the Records of the Judicial Council, Wisconsin State Law Library, Madison, WI).

restitution to "other persons," including insurers. Wis. Stat. § 973.20(6). By adding these provisions, the legislature clearly distinguished between victims and their insurers, who are not the direct victims of a crime. The legislature applied a heightened legal standard—"if justice so requires"—to claims for restitution by insurers.

¶ 74. This standard was proposed by the Judicial Council Restitution Committee and incorporated into 1987 Wisconsin Act 398. The prefatory note to the act states that "[i]n the course of its work, the restitution committee examined the federal laws governing restitution to crime victims and this proposal includes several provisions drawn from those federal laws." Judicial Council Prefatory Note, 1987 Wis. Act 398.

¶ 75. The federal statute explicitly distinguished between victims and insurers, providing that restitution should not be ordered for insured losses, except that "in the interest of justice," the court may "order restitution to any person who has compensated the victim for such loss[.]" *See* 18 U.S.C. 3663(e)(1) (1988) (originally enacted as Victim and Witness Protection Act of 1982, 96 Stat. 1248, 1253–54).[7]

---

[7] The federal statute has been amended several times since 1988, but it continues to distinguish between victims and their insurers:

> (2) For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern. . . .

> (3) The court shall also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense.

18 U.S.C. §§ 3663A(a)(2)-(3) (2000).

¶ 76. On October 18, 1985, the Restitution Committee discussed the federal standard for restitution to those who made payments compensating a crime victim.[8] Committee reporter James Fullin advised the committee that the "federal law prohibits imposing restitution with respect to a loss for which the victim has received compensation, except that *the court may, in the interest of justice,* order restitution to the person who has compensated the victim."[9] This standard, modified to "if justice so requires," was one of the provisions drawn from the federal laws that made its way into the Restitution Committee's legislative proposal.[10] The committee's proposed legislation was passed by the legislature without amendment. *See* 1987 Wisconsin Act 398.

¶ 77. In addition to the plain language of the statute and its history which compel a conclusion that crime victims and insurance companies are to be treated differently, such a difference in treatment is also supported by the purposes of the restitution statute. A restitution award to an insurance company that is beyond the defendant's means may undercut the purposes of criminal restitution. The dual purposes of restitution are compensating the victim and rehabilitating the defendant. *See Huml v. Vlazny,* 2006 WI 87, ¶ 38, 293 Wis. 2d 169, 716 N.W.2d 807. "If a restitution order does not serve both purposes, restitution is not appropriate." *Id.*

---

[8] Judicial Council Restitution Committee, Summary of Proceedings, October 18, 1985 (on file in the Records of the Judicial Council, Wisconsin State Law Library, Madison, WI.)

[9] *Id.* at 4 (emphasis added).

[10] Judicial Council Restitution Committee, Draft C, January 16, 1986 (on file in the Records of the Judicial Council, Wisconsin State Law Library, Madison, WI.)

¶ 78. Restitution paid to an insurance company does not further the goal of compensating the crime victim. By definition, the victim has already been compensated by the insurer.

¶ 79. Likewise, a restitution award to an insurance company may not serve the rehabilitative purpose of restitution. Wisconsin courts have explained, "Restitution . . . may serve to strengthen [an offender's] sense of responsibility and teach the offender to consider more carefully the consequences of his or her actions." *State v. Kennedy,* 190 Wis. 2d 252, 257–58, 528 N.W.2d 9 (Ct. App. 1994). Successfully paying restitution can give a defendant "a positive sense of having earned a fresh start and will [provide] tangible evidence of his or her capacity to alter old behavior patterns and lead a law-abiding life." *Huggett v. State,* 83 Wis. 2d 790, 798, 266 N.W.2d 403 (1978).

¶ 80. Although "[s]ome financial discomfort is consistent with the rehabilitative goal of probation and restitution," *State v. Foley,* 153 Wis. 2d 748, 754, 451 N.W.2d 796 (Ct. App. 1989), ordering an amount of restitution which is beyond the defendant's means undermines the defendant's sense of responsibility. *See State v. Jackson,* 128 Wis. 2d 356, 363, 382 N.W.2d 429 (1986). Absent a meaningful determination of the defendant's ability to pay, restitution loses a large part of its rehabilitative significance. *See* majority op., ¶ 24.

¶ 81. Thus, the statute treats crime victims and their insurers differently with regard to ordering restitution. Because the statute distinguishes between crime victims and insurers, a sentencing court must do so as well. Additionally, the court must explain its discretionary decision that "justice requires" ordering restitution for the benefit of an insurer.

¶ 82. The majority incorrectly concludes that "[t]here is no evidence that the court applied the wrong legal standard or did not ground its decision on a logical interpretation of the facts[.]" *See* majority op., ¶ 62. Discretion is not appropriately exercised when, as here, a circuit court simply tallies up all claims and makes a finding of the total amount of loss.[11] The circuit court failed to distinguish between the crime victims and the insurers who had reimbursed their losses. In fact, the court wrongly determined that the insurers were victims of the crime. The only reason proffered by the circuit court for ordering this restitution, that the insurers "paid money," is not sufficient to support a finding that justice requires their reimbursement.

¶ 83. The circuit court's determination contravenes the plain language of the statute, its history, and its purposes. Because the circuit court failed to distinguish between crime victims and insurers, and failed to apply the correct legal standard, I conclude that the circuit court erroneously exercised its discretion when it ordered $48,000 in restitution to Canadian National and Met Life. Accordingly, I respectfully dissent.

¶ 84. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.

---

[11] The term "discretion" contemplates more than merely giving an answer. It contemplates "a process of reasoning which depends on facts in the record or reasonably derived by inference from the record that yield a conclusion based on logic and founded on proper legal standards." *State v. Delgado,* 223 Wis. 2d 270, 280, 588 N.W.2d 1 (1999). The record must reflect the circuit court's reasoned application of the appropriate legal standard to the relevant facts of the case. *Id.* at 281.