PATIENCE DRAKE ROGGENSACK, C.J.
¶1 *125 This is a review of an unpublished decision of the *126 court of appeals[1] affirming *734 the circuit court's[2] restitution order of $8,487.41 against Shawn T. Wiskerchen for losses caused by his burglary of a neighbor's residence.
¶2 Wiskerchen argues that the circuit court erroneously exercised its discretion in calculating the amount of restitution. He argues that the circuit court improperly considered alleged prior burglaries of the victim's home, contrary to Wis. Stat. § 973.20 (2015-16),[3] which he contends limits restitution to losses resulting from a "crime considered at sentencing." We reject his argument in part because Wiskerchen misreads what the circuit court decided, and also because no evidence was presented at the restitution hearing to support a finding that N.D.'s missing property was stolen on any date other than May 8, which was the burglary considered at sentencing.
¶3 First, we conclude that the plain language of Wis. Stat. § 973.20 authorized the circuit court to order restitution to the victim in this case. Second, we conclude that the circuit court's finding that the victim met her burden in proving the amount of loss resulting from a crime considered at sentencing was not clearly erroneous. The circuit court therefore did not erroneously exercise its discretion in ordering restitution of $8,487.41.
¶4 Accordingly, we affirm the court of appeals.
*127 I. BACKGROUND
¶5 On May 8, 2015, police responded to N.D.'s home after she reported a burglary. N.D. was visibly upset, crying, shaking, and bleeding when the officers arrived. She told the officers she had come home to find all her bathroom cabinets open, and had heard noises coming from upstairs. She went upstairs and opened the back bedroom door to find Wiskerchen, her neighbor, in the bedroom.
¶6 When N.D. discovered that Wiskerchen was inside her home, she began yelling, and she and Wiskerchen began pushing each other. During the ensuing struggle, N.D. reported that Wiskerchen grabbed her by the arm and threw her down the stairs before fleeing the home. N.D. suffered injuries to her wrist, ankle, and shoulder as a result of this fall, and needed to wear a brace on her foot as a result of her injuries. She had difficulty sleeping after the home invasion, and has stated that she no longer feels safe and secure in her home.
¶7 Shortly after arriving at N.D.'s home, police found Wiskerchen hiding in a neighbor's backyard. They searched the backyard and found a pile of clothing matching N.D.'s description of what the suspect was wearing, as well as a badly bent screwdriver. Wiskerchen was arrested and charged with misdemeanor battery, possession of burglarious tools, burglary of a building or dwelling, and second-degree recklessly endangering safety, all as a repeater. He eventually pled no contest to the burglary charge without the repeater enhancer, and was sentenced to five years of initial confinement followed by four years of extended supervision.
*128 ¶8 Police initially had a difficult time discovering Wiskerchen's point of entry into N.D.'s home. It turned out that he had drilled a hole into a basement storm window and had modified the window so it could be opened from the outside with a screwdriver. N.D. told the presentence investigative report (PSI) writer that Wiskerchen *735 may have chosen this particular window because it was not facing any neighbors. An officer reported finding fresh sawdust in the grass beneath the storm window.
¶9 N.D. informed the PSI writer that she had discovered a "nest" in the back bedroom closet, where Wiskerchen had apparently pulled down clothes and arranged a place where he could hide. She also found liquor bottles in the "nest." This discovery caused N.D. to worry that he may have been hiding in her house on prior occasions while she was home, further eroding her sense of security. According to the PSI writer, Wiskerchen bragged that he had previously burglarized "100 to 200 homes," and had made "more money than any judge or cop" by pawning his stolen items in Illinois.
¶10 After the burglary of May 8, N.D. searched her home to take stock of potentially stolen items and collected whatever receipts she could find. She then submitted an itemized insurance claim listing her total loss at $32,138.43. N.D. explained that many of the stolen items had deep sentimental value to her. These included her children's nearly 200-year-old baby rings from Germany, her grandmother's wedding ring that was purchased during the great depression, and a pair of earrings her brother had purchased for her in 1977 after taking on odd jobs so he could afford to buy her a high school graduation gift. On cross-examination, N.D. said that prior to May 8, she did not notice that *129 any of the items listed on her statement of loss were missing. However, the PSI report relates that Wiskerchen disputed the number of items that N.D. claimed were stolen.
¶11 At the contested restitution hearing, N.D. asked to be reimbursed $32,138.43, the value she placed on her stolen property. The insurance company had depreciated the value of the stolen items to $22,279, and eventually paid her $13,791 due to her policy limits.
¶12 N.D. testified that Wiskerchen was wearing a backpack on May 8. However, Wiskerchen's attorney argued "there was no backpack that was reported, the only thing that could have been-that he could have concealed, would have been on his person somehow or in his hands," implying that restitution must be limited to the items found on or near Wiskerchen's person on May 8. He also argued against the contention that Wiskerchen had previously burglarized N.D.'s home, stating that "other than [N.D.'s] opinion of whether he was in [her] house, there's been no other reports completed or done with the police department regarding any other times he was in [her] house." This echoed his statements at sentencing that "I don't really think there's any evidence of [any prior entries]." He argued that because N.D. did not know which items Wiskerchen stole during the May 8 burglary versus during the alleged, unevidenced prior burglaries, Wis. Stat. § 973.20 limited restitution to the items she could prove he stole on May 8.
¶13 The circuit court began by acknowledging that the burden of proof is on the victim to show, by a preponderance of the evidence, "the amount of loss sustained by a victim as a result of a crime considered at sentencing." See Wis. Stat. § 973.20(14)(a). After *130 reciting the relevant provisions of the restitution statute, including the correct statutory definition of "crime considered at sentencing," the circuit court made the following factual findings: "[b]ased on the record, I find that there is a nexus between Mr. Wiskerchen's conduct and the victim's loss, and I find that the victim has met her burden of proof [in the amount of $8,487.41]." *736 ¶14 We granted Wiskerchen's petition for review and now affirm.
II. DISCUSSION
A. Standard of Review
¶15 This case requires us to interpret a statute, to review a circuit court's finding of fact, and to review a circuit court's discretionary restitution order.
¶16 "Statutory interpretation and the application of a statute to a given set of facts are questions of law that we review independently, but benefiting from the analyses of the court of appeals and the circuit court." Marder v. Bd. of Regents, 2005 WI 159, ¶19, 286 Wis. 2d 252, 706 N.W.2d 110.
¶17 We uphold a circuit court's findings of fact unless they are clearly erroneous. Phelps v. Physicians Ins. Co. of Wis. Inc., 2009 WI 74, ¶34, 319 Wis. 2d 1, 768 N.W.2d 615. A circuit court's finding of fact is not clearly erroneous unless it is against the great weight and clear preponderance of the evidence. Royster-Clark, Inc. v. Olsen's Mill, Inc., 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530.
*131 ¶18 Restitution orders involve discretionary decisions of the circuit court. State v. Fernandez, 2009 WI 29, ¶20, 316 Wis. 2d 598, 764 N.W.2d 509. "Reviewing the calculation of restitution involves a question of whether the trial court misused its discretionary authority." Id. This court may reverse a trial court's discretionary decision "only if the trial court applied the wrong legal standard or did not ground its decision on a logical interpretation of the facts." State v. Behnke, 203 Wis. 2d 43, 58, 553 N.W.2d 265 (Ct. App. 1996) ; Fernandez, 316 Wis. 2d 598, ¶20, 764 N.W.2d 509. "We look for reasons to sustain a trial court's discretionary decision." Farmers Auto. Ins. Ass'n v. Union Pac. Ry. Co., 2009 WI 73, ¶32, 319 Wis. 2d 52, 768 N.W.2d 596.
B. Interpretation of Wis. Stat. § 973.20
1. Whether Wis. Stat. § 973.20 Authorized Restitution
¶19 The first issue is whether Wisconsin's restitution statute, Wis. Stat. § 973.20, authorized the circuit court to order restitution to N.D. in this case. Wisconsin Stat. § 973.20 states in relevant part:
(1g)(a) "Crime considered at sentencing" means any crime for which the defendant was convicted and any read-in crime.
(b) "Read-in crime" means any crime that is uncharged or that is dismissed as part of a plea agreement, that the defendant agrees to be considered by the court at the time of sentencing and that the court considers at the time of sentencing the defendant for the crime for which the defendant was convicted.
(1r) When imposing sentence or ordering probation for any crime ... for which the defendant was convicted, the court ... shall order the defendant to make full or partial restitution under this section to any victim of a crime....
*132 (2) If a crime considered at sentencing resulted in damage to or loss or destruction of property, the restitution order may require that the defendant:
....
(b) ... pay the owner or owner's designee the reasonable repair or replacement cost or the greater of:
1. The value of the property on the date of its damage, loss or destruction ...
....
(14)(a) The burden of demonstrating by the preponderance of the evidence *737 the amount of loss sustained by a victim as a result of a crime considered at sentencing is on the victim.
¶20 Statutory interpretation begins with the language of the statute. State ex. rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning. Id."If the words chosen for the statute exhibit a 'plain, clear statutory meaning,' without ambiguity, the statute is applied according to the plain meaning of the statutory terms." State v. Grunke, 2008 WI 82, ¶22, 311 Wis. 2d 439, 752 N.W.2d 769 (citing Kalal, 271 Wis. 2d 633, ¶46, 681 N.W.2d 110 ).
¶21 "Statutory purpose is important in discerning the plain meaning of a statute." Westmas v. Creekside Tree Serv., 2018 WI 12, ¶19, 379 Wis. 2d 471, 907 N.W.2d 68 (citing Kalal, 271 Wis. 2d 633, ¶48, 681 N.W.2d 110 ). "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole;
*133 in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Kalal, 271 Wis. 2d 633, ¶46, 681 N.W.2d 110. Therefore, in construing a statute, "we favor a construction that fulfills the purpose of the statute over one that defeats statutory purpose." Westmas, 379 Wis. 2d 471, ¶19, 907 N.W.2d 68.
¶22 The primary purpose of Wis. Stat. § 973.20 is to compensate the victim. State v. Madlock, 230 Wis. 2d 324, 332, 602 N.W.2d 104 (Ct. App. 1999). The statute "reflects a strong equitable public policy that victims should not have to bear the burden of losses if the defendant is capable of making restitution."[4] State v. Canady, 2000 WI App 87, ¶8, 234 Wis. 2d 261, 610 N.W.2d 147 (citations omitted). For this reason, Wisconsin courts have repeatedly held that "restitution is the rule and not the exception," and "should be ordered whenever warranted." Id. (quoting Madlock, 230 Wis. 2d at 333, 602 N.W.2d 104 ). In light of this important public policy, courts should "construe the restitution statute 'broadly and liberally in order to allow victims to recover their losses as a result of a defendant's criminal conduct.' " Madlock, 230 Wis. 2d at 332, 602 N.W.2d 104 (quoting State v. Anderson, 215 Wis. 2d 673, 682, 573 N.W.2d 872 (Ct. App. 1997) ). We interpret the restitution statute with these principles in mind.
¶23 Wisconsin Stat. § 973.20(1r) requires that the sentencing court order the defendant to pay restitution to any victim of a crime considered at sentencing, unless the court "finds substantial reason not to do *134 so and states the reason on the record." If "a crime considered at sentencing" resulted in a loss of property, courts are authorized to pay the victim either the replacement cost or the property's value. Wis. Stat. § 973.20(2)(b).
¶24 A "crime considered at sentencing" means the crime of conviction and any read-in crime. Wis. Stat. § 973.20(1g)(a). A "read-in crime" is a crime that meets three criteria: (1) is uncharged or is dismissed as part of a plea agreement, (2) the defendant agrees that it will be considered at sentencing, and (3) the court considers it at the time of sentencing. § 973.20(1g)(b).
¶25 At a restitution hearing, the victim has the burden of proving the *738 amount of loss she sustained as a result of a crime considered at sentencing. Wis. Stat. § 973.20(14)(a). In keeping with Wisconsin's strong public policy of compensating victims, Wisconsin courts have interpreted "crime considered at sentencing" quite broadly. The crime encompasses "all facts and reasonable inferences concerning the defendant's activity related to the 'crime' for which the defendant was convicted, not just those facts necessary to support the elements of the specific charge of which the defendant was convicted." Canady, 234 Wis. 2d 261, ¶10, 610 N.W.2d 147 (quoting Madlock, 230 Wis. 2d at 333, 602 N.W.2d 104 ). The victim needs to show that there is a "causal nexus" between the crime and the victim's losses, such that the defendant's criminal activity was a "substantial factor" in causing the losses. Canady, 234 Wis. 2d 261, ¶9, 610 N.W.2d 147. The court considers the defendant's "entire course of conduct" in committing the crime of conviction, not merely the facts necessary to support the conviction. Id., ¶10 (quoting State v. Rodriguez, 205 Wis. 2d 620, 627, 556 N.W.2d 140 (Ct. App. 1996) ). *135 ¶26 Canady demonstrated the breadth of "crime considered at sentencing." In that case, Canady "put forth quite a struggle" when police attempted to arrest him for burglary. Canady, 234 Wis. 2d 261, ¶11, 610 N.W.2d 147. As the officers struggled to escort him to the ground, he attempted to grab a pry bar from his pocket. Id. An officer tossed it out of his reach, breaking a glass door behind him. Id. Canady was convicted of burglary and resisting arrest. Id., ¶3. The circuit court ordered Canady to pay restitution for the cost of repairing the broken door, and the court of appeals affirmed. Id., ¶12. Even though Canady did not break the door himself, and even though this fact was not strictly necessary to convict him of resisting arrest, his conduct in committing the crime of conviction was a "substantial factor" in causing the damage. Id.
¶27 In this case, Wiskerchen was convicted of burglarizing N.D.'s home on May 8. This burglary was a "crime considered at sentencing" under Wis. Stat. § 973.20(1g)(a), as it was a crime for which the defendant was convicted. N.D. was the victim of the May 8 burglary, as it was her home that was burglarized, so she was a victim of a "crime considered at sentencing." Therefore, Wis. Stat. § 973.20 authorized the circuit court to order Wiskerchen to pay restitution to N.D.
¶28 Finally, we note that any potential prior burglaries were not "read-in crimes." As mentioned above, one component of a read-in crime under Wis. Stat. § 973.20(1g)(b) is that the defendant agrees to have it considered at sentencing. Wiskerchen did not agree to have any potential prior burglaries considered at sentencing. Therefore, they are not read-in crimes.
*136 2. Restitution Amount
¶29 We next review the circuit court's finding of fact that the victim met her burden of proving a loss of $8,487.41 as a result of a crime considered at sentencing. We conclude that although the circuit court did not itemize which stolen items were included in the award of $8,487.41, the finding of fact that N.D. proved her loss is not clearly erroneous.
¶30 As noted above, a circuit court's finding of fact is not clearly erroneous unless it is against the great weight and clear preponderance of the evidence, even if the evidence may have presented competing factual inferences. See Phelps, 319 Wis. 2d 1, ¶39, 768 N.W.2d 615. Findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding.
*739 Royster-Clark, Inc., 290 Wis. 2d 264, ¶12, 714 N.W.2d 530. We search the record not for evidence opposing the circuit court's decision, but for evidence supporting it. Id.
¶31 In this case, the evidence presented at the restitution hearing would permit a reasonable person to find that N.D. had met her burden to prove "the amount of loss sustained." First, evidence was presented that numerous items were stolen from N.D.'s home. N.D. presented an itemized list of missing property that she had submitted to her insurance company. She testified that this document was a "true and accurate representation" of the items she found missing after the burglary. There was no evidence presented at the restitution hearing to rebut N.D.'s claim.
¶32 Second, we know Wiskerchen burglarized N.D.'s home on May 8. He pled guilty to this burglary, *137 which was by definition a "crime considered at sentencing" pursuant to Wis. Stat. § 973.20(1g)(a).
¶33 Third, there was no evidence presented that any of the items comprising the amount for which restitution was ordered were stolen from N.D.'s home on any date other than May 8. Only Wiskerchen's mother's hearsay statement relayed by N.D. that he had been in and out of her house prior to May 8 implied there could have been other thefts.[5]
¶34 Next, the "nest" in the bedroom closet could be evidence that Wiskerchen may have burglarized N.D.'s home on days other than May 8. However, he also could have hidden there and drank liquor on prior occasions, without stealing any of the property that N.D. discovered was missing after the May 8 burglary.
¶35 Crucially, there was no evidence presented at the restitution hearing that either he or anyone else had stolen any of the listed items from N.D.'s home on days other than May 8. On the contrary, his attorney asked N.D. the following question at the restitution hearing: "other than your opinion of whether he was in your house, there's been no other reports completed or done with the police department regarding any other times he was in your house, correct?" Shortly thereafter, he asked her: "May 8 is the only report that he was in your house, correct?" N.D. answered both questions in the affirmative. Wiskerchen's attorney had previously stated at the sentencing hearing that "I don't think there's really any evidence of [any prior burglaries]."
¶36 The consistent theme from the defense was that there was no evidence Wiskerchen burglarized N.D.'s home before May 8. That said, the finding that *138 N.D. proved a loss in the amount of $8,487.41 for which restitution was ordered due to stolen property is not against the great weight and clear preponderance of the evidence presented to the circuit court. Therefore, the circuit court's finding that N.D. met her burden of proving a loss of $8,487.41 as a result of a crime considered at sentencing is not clearly erroneous.
C. The Circuit Court's Exercise of Discretion
¶37 Having concluded that restitution was authorized and that the circuit court's finding that the victim had met her burden of proof was not clearly erroneous, we now review the circuit court's discretionary decision to set restitution at $8,487.41. As mentioned above, restitution orders involve discretionary decisions of the circuit court. We may reverse a circuit court's discretionary decision "only if the trial court applied the wrong legal standard or did not ground its decision on a logical interpretation of the facts." Behnke, 203 Wis. 2d at 58, 553 N.W.2d 265 ;
*740 Fernandez, 316 Wis. 2d 598, ¶20, 764 N.W.2d 509. We look for reasons to sustain a trial court's discretionary decision. Farmers Auto. Ins. Ass'n, 319 Wis. 2d 52, ¶32, 768 N.W.2d 596.
¶38 In this case, the circuit court applied the correct legal standard and grounded its decision on a logical interpretation of the facts. The court applied the mandate of Wis. Stat. § 973.20 and found that N.D. suffered a loss due to Wiskerchen's conduct. The court knew that Wiskerchen had burglarized N.D.'s home on May 8, and no evidence was introduced that he or anyone else had stolen N.D.'s property on any other date. Given that this was the evidence presented, the *139 finding that Wiskerchen was responsible for N.D.'s loss based on the May 8 burglary is a logical interpretation of the evidence.
¶39 Wiskerchen contends that the court of appeals' decision applied the wrong law, erroneously considering possible prior burglaries in its restitution award. According to the court of appeals, any prior burglaries of N.D.'s home were proper subjects of consideration under Wis. Stat. § 973.20, as they were part of the same "course of criminal conduct" as the May 8 burglary. State v. Wiskerchen, No. 2016AP1541-CR, unpublished slip op., ¶13, 379 Wis. 2d 367, 2017 WL 5030837 (Wis. Ct. App. Nov. 1, 2017).
¶40 The court of appeals relied heavily on State v. Queever, 2016 WI App 87, 372 Wis. 2d 388, 887 N.W.2d 912, in reaching its conclusion. However, Queever is distinguishable. There, a woman suspected that her home was being burglarized repeatedly. Id., ¶3. She watched her home's security camera footage and saw a man with "longer hair and a larger body build" entering her home. Id. The footage was not clear enough to identify the suspect, so she purchased a new security system for $2,495. Id., ¶¶6-8. The new system was then used to identify and capture the suspect, Thomas Queever. Id., ¶6.
¶41 The circuit court awarded restitution for the cost of the new security system, and the court of appeals affirmed. Id., ¶1. The court held that the circuit court's finding that Queever committed the previous burglaries was not clearly erroneous, and that the previous burglaries were properly considered under Wis. Stat. § 973.20 as "part of the same course of conduct as the crime of conviction." Id., ¶¶16, 25.
¶42 Relying on Queever, the court of appeals in the case now before us held that Wiskerchen's alleged *140 prior burglaries of N.D.'s home properly could be considered at Wiskerchen's restitution hearing as part of a "single course of criminal conduct" related to the May 8 burglary. Wiskerchen, unpublished slip op., ¶13.
¶43 We reject Wiskerchen's argument. We review the circuit court's exercise of discretion, not the court of appeals' reasoning. See Fernandez, 316 Wis. 2d 598, ¶20, 764 N.W.2d 509. That said, we read the circuit court's decision a bit differently than did the court of appeals.
¶44 The court of appeals assumed the restitution order implied that "[t]he circuit court determined that it could consider the prior burglaries as conduct related to Wiskerchen's May 8 burglary." Wiskerchen, unpublished slip op., ¶5. We do not read the circuit court's restitution order or the transcript from the restitution hearing as necessarily implying this conclusion of law. The circuit court explicitly found only that "based on the record ... the victim has met her burden of proof." Her burden was to prove the amount of her loss. Wis. Stat. § 973.20(14)(a). She proved a loss of $8,487.41. As explained above, this finding of fact is not clearly erroneous. We conclude that the circuit court did not apply *741 the wrong law, and that its decision was grounded on a logical interpretation of the evidence that was presented at the restitution hearing. The circuit court therefore did not erroneously exercise its discretion by setting restitution at $8,487.41.
III. CONCLUSION
¶45 Wiskerchen argues that the circuit court erroneously exercised its discretion in calculating the amount of restitution. He argues that the circuit court improperly considered alleged prior burglaries of the *141 victim's home, contrary to Wis. Stat. § 973.20 which he contends limits restitution to losses resulting from a "crime considered at sentencing." We reject his argument in part because Wiskerchen misreads what the circuit court decided and also because no evidence was presented at the restitution hearing to support a finding that N.D.'s missing property was stolen on any date other than May 8, which was the burglary considered at sentencing.
¶46 First, we conclude that the plain language of Wis. Stat. § 973.20 authorized the circuit court to order restitution to the victim in this case. Second, we conclude that the circuit court's finding that the victim met her burden in proving the amount of loss resulting from a crime considered at sentencing was not clearly erroneous. The circuit court therefore did not misuse its discretion in calculating restitution at $8,487.41.
¶47 Accordingly, we affirm the court of appeals.
By the Court. -The decision of the court of appeals is affirmed.

State v. Wiskerchen, No. 2016AP1541-CR, unpublished slip op., 379 Wis. 2d 367, 2017 WL 5030837 (Wis. Ct. App. Nov. 1, 2017).

The Honorable Faye M. Flancher of Racine County presided.

All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

Wisconsin's strong public policy of supporting victims' rights is further reflected in Wis. Stat. ch. 950, which contains a bill of rights for victims and ensures that all crime victims are "treated with dignity, respect, courtesy, and sensitivity."

Wiskerchen's mother did not testify at the restitution hearing.