# 2021 WI App 84

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:    2020AP1661-CR

†Petition for Review filed

Complete Title of Case:

### STATE OF WISCONSIN,

#### PLAINTIFF-RESPONDENT,

### V.

### ALEX SCOTT STONE,

#### DEFENDANT-APPELLANT.†

| | |
|---|---|
| Opinion Filed: | November 17, 2021 |
| Submitted on Briefs: | September 9, 2021 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Neubauer, Reilly, and Grogan, JJ. |
| Concurred: | |
| Dissented: | Reilly, J. |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeremy A. Newman,* assistant state public defender. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Abigail C. S. Potts,* assistant attorney general, and *Joshua L. Kaul*, attorney general. |

# COURT OF APPEALS
## DECISION
## DATED AND FILED

## November 17, 2021

**Sheila T. Reiff**
**Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1661-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF18

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

ALEX SCOTT STONE,

   DEFENDANT-APPELLANT.

        APPEAL from an order of the circuit court for Fond du Lac County: ROBERT J. WIRTZ, Judge. *Affirmed*.

        Before Neubauer, Reilly and Grogan, JJ.

¶1    GROGAN, J.   Alex Scott Stone appeals from an order requiring him to pay restitution of $6,008.60 to the victim, M.S.[1]  Stone claims the circuit court erroneously exercised its discretion in making the restitution award either in misinterpreting WIS. STAT. § 973.20 (2017-18)[2] or because Stone did not have the ability to pay.  We affirm.

## I. BACKGROUND

¶2    In January 2017, Stone drove M.S.'s pick-up truck without her permission.  While Stone was driving, City of Fond du Lac Police Officer, Melissa Sprangers, noticed sparks coming from the passenger side wheel and conducted a traffic stop, which led to Stone's arrest for OWI.  The damage to the pick-up truck rendered it inoperable and it was towed.

¶3    The State charged Stone with operating a motor vehicle without the owner's consent, contrary to WIS. STAT. §§ 943.23(3) and 939.50(3)(i).  M.S. submitted a request for restitution, including a repair estimate from an auto-body shop for $5,486.37 and the towing bill for $522.23.[3]  M.S. explained in the victim

---

[1] We note that Stone died after the court ordered restitution, but his death does not moot this appeal.  *See* ***State v. McDonald***, 144 Wis. 2d 531, 539, 424 N.W.2d 411 (1988) (holding "society and the deceased have a very real interest in a final determination of the defendant's appeal").  For ease of reference, we use "Stone" throughout the opinion.

[2] 2019 Wisconsin Act 71, § 2, which went into effect on January 23, 2020, renumbered and amended WIS. STAT. § 973.20(2) (2017-18).  Despite the renumbering and amendment, the only textual change amended "par. (a)" in the 2017-18 version to "subd. 1."  Because the restitution hearing occurred while the prior numbering was in effect, all references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[3] The restitution request also asked for $280.35 for new brakes M.S. had installed shortly before Stone damaged her pick-up truck, but because this amount did not qualify as restitution, the circuit court did not include it in its restitution award, and we need not address it further.

impact statement that this vehicle was her "farm pick up truck" used "to transport hay, minerals and to feed animals at our different farm locations[.]"

¶4      This case was repeatedly delayed due to Stone initially being found incompetent, several attorney withdrawals, and Stone not appearing for court hearings, resulting in warrants being issued.  Eventually, after Stone received treatment for his mental illness, he entered a no contest plea, resulting in his conviction in August 2019.  The circuit court withheld sentence and placed Stone on three years of probation.

¶5      The circuit court held a restitution hearing in October 2019.  M.S. testified that she still owned the pick-up truck and that it was "parked right now, until we can do the repairs."  She testified that she had paid the $522.23 towing bill, but had not yet repaired the pick-up truck because the repair shop required the $5,486.37 payment before doing the work.  On cross-examination, Stone's lawyer asked if M.S. had determined the Kelley Blue Book[4] (KBB) value.  She had not. Stone's lawyer showed M.S. a printout the lawyer had run on the date of the restitution hearing from KBB estimating the pick-up truck's private-party sale value at $2,394.  M.S. confirmed she had not checked the KBB value in January 2017, and Stone's attorney stated she had not been able to determine the pick-up truck's January 2017 value.  M.S. questioned whether the pick-up truck's KBB value would have been higher in January 2017.

¶6      On redirect, M.S. expressed concern that she could not repair her pick-up truck for $2,300 because "there was way too much damage done to it to warrant

---

[4] Kelley Blue Book Company, Inc. operates an "automotive information" website, which provides an estimated value for vehicles. *Kelley Blue Book Company, Inc.*, Encyclopedia.com, https://www.encyclopedia.com/books/politics-and-business-magazines/kelley-blue-book-company-inc (last visited Sept. 15, 2021).

sticking that in that vehicle," she has "nothing to use on my farm," she "would want to replace" the pick-up truck, and she could not repair her pick-up truck "unless I stick the five thousand dollars in it to get it done correctly."

¶7 Stone also testified. He told the circuit court he was then under a WIS. STAT. ch. 51 commitment order, that he lived in a group home where he paid $600 a month (which included rent and all food), he received $773 monthly from social security for his disability, and he paid $60 a month for a cell phone. After those expenses, he was left with $113 a month for things like "cigarettes and soda," which he conceded were "not … really necessary."

¶8 The circuit court found the repair shop estimate M.S. submitted was "fair" and constituted the "*reasonable* value of the repairs." (Emphasis added.) The court also found M.S. was entitled to restitution for the towing bill she had previously paid. It ordered restitution to M.S. in the amount of $6,008.60, found Stone had the ability to pay, and made payment a condition of Stone's probation with any unpaid amounts at the end of the probationary period to be converted to a "civil judgment in favor of" M.S. When Stone's lawyer asked for clarification on why the circuit court ordered restitution in the amount of the repair cost "even though [M.S.] testified she does not intend to repair the vehicle[,]" the circuit court explained its rejection of counsel's interpretation of M.S.'s testimony, stating:

> Actually, I heard more than that. You know, it was, well, I don't really want to repair it because it's in lousy shape after he damaged it. But then she says, well, if I—then she said yeah, but if I can get it done and it—and it's good with that amount, I will do it. Obviously it's useless to her right now. So, I take that to mean that—that the reasonable repair is a reasonable option.

The circuit court amended the judgment to reflect the restitution order. Stone appeals the restitution order.

4

## II.  STANDARD OF REVIEW

¶9      Whether the restitution statute applies is a question of law, which we review independently.  ***State v. Wiskerchen***, 2019 WI 1, ¶¶15-16, 385 Wis. 2d 120, 921 N.W.2d 730.  Whether to award restitution and the amount of any award, however, involves "discretionary decisions of the circuit court" that will be reversed "'only if the trial court applied the wrong legal standard or did not ground its decision on a logical interpretation of the facts.'" ***Id.***, ¶18 (citation omitted).  "We look for reasons to sustain a trial court's discretionary decision." ***Id.*** (citation omitted).

## III.  DISCUSSION

¶10    It is undisputed that the restitution statute, WIS. STAT. § 973.20, applies.  The only issues are whether the circuit court erroneously exercised its discretion in setting the amount of restitution or in finding Stone had the ability to pay.  Before turning to the specifics of this case, it is important to acknowledge that our supreme court recently addressed the principles with which restitution awards should be reviewed.  *See* ***Wiskerchen***, 385 Wis. 2d 120, ¶22.  It emphasized that the "primary purpose of WIS. STAT. § 973.20 is to compensate the victim" and the restitution statute "reflects a strong equitable public policy that victims should not have to bear the burden of losses if the defendant is capable of making restitution." ***Wiskerchen***, 385 Wis. 2d 120, ¶22 (citation omitted).  It further explained that "courts should 'construe the restitution statute broadly and liberally in order to allow victims to recover their losses as a result of a defendant's criminal conduct.'" ***Id.*** (citation omitted).  Keeping these principles in mind, we turn to Stone's contentions.

*A.  Amount of restitution*

¶11 Stone contends the circuit court erroneously exercised its discretion in its interpretation of the restitution statute and its application to the facts of this case. We disagree.

¶12 WISCONSIN STAT. § 973.20(2) provides:

> If a crime considered at sentencing resulted in damage to or loss or destruction of property, the restitution order may require that the defendant:
>
> (a) Return the property to the owner or owner's designee; or
>
> (b) If return of the property under par. (a) is impossible, impractical or *inadequate*, pay the owner or owner's designee *the reasonable repair or replacement cost* or the greater of:
>
> 1. The value of the property on the date of its damage, loss or destruction; or
>
> 2. The value of the property on the date of sentencing, less the value of any part of the property returned, as of the date of its return. The value of retail merchandise shall be its retail value.

(Emphasis added.)

¶13 When reviewing statutory language, this court "ascertain[s] and appl[ies] the plain meaning of the statutes as adopted by the legislature." *White v. City of Watertown*, 2019 WI 9, ¶10, 385 Wis. 2d 320, 922 N.W.2d 61. "[S]tatutory interpretation 'begins with the language of the statute[,]'" and the language is given its "common, ordinary, and accepted meaning[.]" *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶¶45-46, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted) ("Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole;

in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.").

¶14 Applying these principles, the plain statutory language under WIS. STAT. § 973.20(2)(b) identifies three options the circuit court may choose in determining a proper restitution amount: (1) the reasonable repair cost; (2) the reasonable replacement cost; or (3) the value of the property on the date of the damage, loss, or destruction *or* the value of the property as of sentencing—whichever of those two amounts is greater. When a circuit court selects option (1), the statute's plain language does not restrict the award to the actual value of the property even when the actual value may be less than the reasonable repair cost. Rather, the statute allows a circuit court to choose the "*reasonable* repair" option in determining the restitution amount even if the repair cost exceeds the property's value. The value of the property—and the requirement that the circuit court choose the "greater" of two described amounts—comes into play only when the circuit court selects the third choice out of the three options in setting the restitution amount. *See id.*

¶15 Based on WIS. STAT. § 973.20(2)(b)'s plain meaning, we reject Stone's claim that the circuit court misinterpreted the statute by awarding the "greater of" the repair costs instead of the "value of the property." As explained above, § 973.20(2)(b) provides a circuit court with discretion to choose between the three enumerated options, and only when selecting option (3) is the circuit court required to select the "greater" of the two stated values. The circuit court here, in its discretion, certainly *could have* opted to base restitution on option (3), and if it had done so, then it *would have* been bound by the *greater* and *value* language. However, the circuit court did not elect to base restitution on the *value* option, but instead selected the *reasonable repair* option. We have no reason to override the

circuit court's discretionary decision to utilize the reasonable repair option instead of the value option, particularly because by choosing the repair option, the circuit court afforded M.S. the opportunity to be returned to the position she was in before she was victimized. Moreover, the record reflects that it was the prosecutor, rather than the circuit court, who apparently misunderstood the statutory language. Our review of the entire restitution hearing transcript confirms that any confusion for the circuit court about which options in the statute the "greater of" language applied to had resolved at the time the circuit court made its ruling.

¶16 We also reject Stone's claim that the circuit court's award was erroneous based on Stone's argument that M.S.'s intention to replace rather than repair her pick-up truck made it illogical to award repair costs. Contrary to Stone's assertion, the victim's testimony did not eliminate repairing the pick-up truck. The victim still had the pick-up truck, and her last statement indicated that if she received the $5,000 in restitution, she could repair it. M.S. had a pick-up truck used in farming operations and that pick-up truck was in very good condition until Stone's criminal actions rendered the pick-up truck inoperable. Sometimes, particularly when dealing with vehicles, the reasonable repair option will exceed the actual value of the vehicle. WISCONSIN STAT. § 973.20(2)(b) specifically affords circuit courts the discretion to select option (1), *reasonable* repair, as the circuit court did here. When the circuit court does so, the amount of restitution is not tied to *actual value*, but rather to *reasonable repair* costs. We recognized this over two decades ago in deciding that circuit courts have the discretion to order restitution for repair costs that exceed the value of the property. *See State v. Kennedy*, 190 Wis. 2d 252, 260, 528 N.W.2d 9 (Ct. App. 1994).

¶17 The option to repair affords a victim the opportunity to get his or her vehicle back, i.e., to be made whole. Although the KBB value may provide a

8

general guide as to the *average* value of similar vehicles, it does not necessarily give the victim a vehicle comparable to the one he or she actually had. That was the choice this circuit court made, which is authorized by the statute.

¶18 Awarding reasonable repair costs that exceed actual value when the circumstances so warrant is also consistent with our supreme court's recognition that courts should "broadly and liberally" construe the restitution statute so that victims of crimes are compensated for their losses as "victims should not have to bear the burden of losses if the defendant is capable of making restitution." *Wiskerchen*, 385 Wis. 2d 120, ¶22 (citation omitted).

¶19 The circuit court did not erroneously exercise its discretion in choosing WIS. STAT. § 973.20(2)(b)'s option (1)—based on its conclusion that return of the pick-up truck was an *inadequate* remedy because it was no longer operable and because both the towing expenses and repair estimate M.S. provided were reasonable.

### B. Ability to pay

¶20 Stone also asserts the circuit court erroneously exercised its discretion in ordering restitution because he does not have the ability to pay. His argument is based on his belief that because he is mentally ill, unable to work, and has only $113 of monthly disposable income, he does not have the ability to pay. We disagree.

¶21 WISCONSIN STAT. § 973.09(1)(b) requires the circuit court to order any person placed on probation to "pay restitution under [WIS. STAT. §] 973.20, unless the court finds there is substantial reason not to order restitution as a condition of probation." Section 973.20(13)(a) requires the circuit court to consider all of the following factors when ordering restitution:

1. The amount of loss suffered by any victim as a result of a crime considered at sentencing.

2. The financial resources of the defendant.

3. The present and future earning ability of the defendant.

4. The needs and earning ability of the defendant's dependents.

5. Any other factors which the court deems appropriate.

Stone had the burden of proving his financial resources and earning ability by a preponderance of the evidence.[5]  *See* § 973.20(14)(b).  These factors address the defendant's ability to pay, which as noted, a circuit court must consider before ordering restitution.  *See **State v. Fernandez***, 2009 WI 29, ¶¶23-24, 316 Wis. 2d 598, 764 N.W.2d 509.

¶22    Stone testified at the restitution hearing about his financial resources and earning ability.  He testified that his monthly income was $773 and his monthly expenses were $600 for rent and all food and $60 for his cell phone.  This left $113 a month in extra income.  Stone also testified that the only items he bought with his leftover money were soda and cigarettes, which he conceded were "not … really necessary."  Stone further testified he was not working due to his disability, but that he had worked at a gas station in the past and that he might work part-time at a gas station or "McDonald's or something like that, just to get out of the house and stuff" in the future.

¶23    The record demonstrates that the circuit court considered Stone's finances and his ability to pay.  It looked at Stone's monthly income, his expenses, and the income he had left after paying his rent/food and cell phone bill.  The circuit court's finding that Stone had the ability to pay restitution was not clearly erroneous,

---

[5] There is nothing in the record suggesting Stone had dependents and thus we do not address WIS. STAT. § 973.20(13)(a)4.

as it was supported by the testimony at the restitution hearing. Although $113 may strike some as a small amount of disposable income, it was extra money for Stone after all his monthly bills were paid. Accordingly, the circuit court's decision on ability to pay was not an erroneous exercise of discretion.

*By the Court.*—Order affirmed.

Recommended for publication in the official reports.

No. 2020AP1661-CR(D)

¶24 REILLY, J. (*dissenting*). The purpose of restitution is to return victims of crime to the position they were in before they were victimized. *State v. Holmgren*, 229 Wis. 2d 358, 366, 599 N.W.2d 876 (Ct. App. 1999); *see also State v. Johnson*, 2005 WI App 201, ¶14, 287 Wis. 2d 381, 704 N.W.2d 625; *State v. Boffer*, 158 Wis. 2d 655, 662, 462 N.W.2d 906 (Ct. App. 1990). In this action, the circuit court, utilizing a repair estimate as its basis, awarded the victim $3,000 more than what the victim's truck was worth before the defendant damaged it. The victim admitted that the cost to repair her truck exceeded its value before it was damaged by Alex Scott Stone and that she would replace the truck rather than repair it. The circuit court erred in its discretion by using the repair estimate rather than the replacement cost.

¶25 The Majority compounds the circuit court's error by holding that "even if the repair cost exceeds the … value" of the damaged property, a repair estimate is always a proper measure for restitution. Majority, ¶14. A court (trial or appellate) must consider the evidence as to what the victim lost before it can determine a *reasonable* restitution award. *See* WIS. STAT. § 973.20(2)(b). The evidence from the restitution hearing is that the victim had a truck worth $2,394 when it was damaged. The circuit court erred in awarding an amount that was more than twice the value of the truck, and the Majority errs in holding that a repair estimate can always be used, regardless of the evidence as to value ("even if the repair cost exceeds the … value" of the damaged property). *See* Majority, ¶14. I respectfully dissent.

¶26 The facts in this case are simple and straightforward. Stone stole the victim's truck and destroyed it. A victim has the burden of proof at a restitution hearing to prove his or her loss. *See* WIS. STAT. § 973.20(14)(a); *see also* **State v. Madlock**, 230 Wis. 2d 324, 336, 602 N.W.2d 104 (Ct. App. 1999). The victim, despite being told to bring evidence as to the value of her truck to the restitution hearing, did not offer any evidence as to what the value of the truck "was" (i.e., at time of loss) or "is" (i.e., at time of sentencing/restitution hearing). *See* § 973.20(2)(b)1.-2. The victim testified that she did not know what the value of her truck was. She did, however, present an estimate from a repair shop that indicated a repair cost of $5,486.37. The repair estimate also indicated that the truck was a "TOTAL LOSS." Evidence was offered and received—without opposition—that the Kelley Blue Book value of the truck in good condition was $2,394 (i.e., you could buy (replace) or sell the truck for $2,394).

¶27 WISCONSIN STAT. § 973.20(2)(b) allows the circuit court to choose either the repair, replacement, or value option. *See also* Majority, ¶14. While the statute grants the court broad discretion to award restitution, our legislature also sought to limit the court's discretion through the use of the term "reasonable." *See* § 973.20(2)(b). The plain language of the statute does not allow a court to choose a "restitution amount even if the repair cost exceeds the property's value" without applying the facts received into evidence at the restitution hearing so as to ensure that the restitution amount arrived at is "reasonable." *See* Majority, ¶14. Section 973.20 requires a court to choose an amount "reasonab[ly]" necessary to return victims of crime to the position they were in before they were victimized. *See* § 973.20(2)(b); **Holmgren**, 229 Wis. 2d at 366.

¶28 When presented with the evidence that her truck was worth $2,394, the victim testified that she would replace the truck rather than repair it, as the

2

damage to the truck did not "warrant sticking" $5,486.37 into the truck. Despite this testimony, the circuit court utilized the repair estimate as the basis for restitution rather than the replacement cost. The Majority, without analyzing the facts presented at the hearing, concludes that $5,486.37 is a "reasonable repair" cost, as repair estimates may be used regardless of the value of the damaged property. Majority, ¶14. The victim, contrary to both the circuit court and the Majority, understands that it is not reasonable to "stick[]" $5,486.37 into a piece of property that is worth $2,394. Stated another way, the truck "in good condition" is worth $2,394 according to the evidence in the record. The repair estimate indicated the truck was a "TOTAL LOSS." While it would cost $5,486.37 to repair it back to its "good" condition, you would still be left with a truck worth only $2,394. The victim recognizes the flaw in the Majority's rationale: it is not reasonable to spend $5,486.37 in order to end up with a truck worth $2,394. The victim correctly recognizes that given the evidence produced at the restitution hearing, she should simply go out and buy a similar truck in "good condition" at a price of $2,394.

¶29 I readily acknowledge that a court may, by applying the facts presented at a restitution hearing, choose an amount that exceeds the fair market value of damaged/destroyed property. *See* **State v. Kennedy**, 190 Wis. 2d 252, 260, 528 N.W.2d 9 (Ct. App. 1994). To do so, however, a court must utilize the facts in the record to justify exceeding the fair market value of the property damaged. In **Kennedy**, the court considered the "unique" facts presented by the victim in proving up a loss which exceeded the fair market value of the damaged property. **Id.** at 261. The victims put forth evidence that they had purchased a car in order to restore it and they had put in over two hundred hours of labor towards restoring the car at the time it was stolen. **Id.** at 262. While the fair market value of the shell of the car was between $1,000 and $1,200, the court found that awarding that amount would

deprive the victims of the fruits of their labor and the loss of the future opportunity to complete the restoration. *Id.* at 261-62. ***Kennedy*** stands for the principle that a sentencing court has the discretion to consider "unique" factual circumstances in arriving at a proper restitution amount for the replacement cost of a vehicle. *See id.*

¶30    We do not have any "unique" facts in this case. The only evidence received is that the truck had a Kelley Blue Book value (the victim's vehicle in good condition) that could be bought (replaced) for a cost of $2,394. The victim presented no evidence that the truck had any greater cost to replace it. The Majority argues that "[t]he option to repair affords a victim the opportunity to get his or her vehicle back, i.e., to be made whole." Majority, ¶17. I disagree. By taking a piece of property worth $2,394 and increasing its value to over $5,000, the victim is made more than whole. The victim receives a windfall. She is not "returned to the position she was in before she was victimized," Majority, ¶15; she now has an award that will allow her to obtain an asset that is worth two times more than what she had before the damage occurred. While in ***Kennedy*** the victim proved up why the court should award more than the value of the vehicle, the victim in this case made no such showing and admitted that it would be better to replace the vehicle than to "stick[]" $5,000 into a vehicle that Kelley Blue Book says is only worth $2,394. Utilizing a repair estimate so as to award the victim $3,000 more than what the victim had before she was victimized is an erroneous exercise of discretion. We do not use restitution to punish a defendant, and we do not use restitution to enrich a victim. We use restitution to return the victim to the position he or she was in before being victimized.

¶31    Whether a court chooses the reasonable repair cost, replacement cost, or value option, a court must know what the value of the loss was to the victim. The Majority's carte blanche application of "even if the repair cost exceeds the

property's value" as a measure of restitution is an erroneous reading and application of WIS. STAT. § 973.20. The victim in this case is entitled to a restitution award of $2,394 for the "TOTAL LOSS" of her truck.[1]

---

[1] The effect of ordering restitution from Stone's $3.75 per day ($113 divided by thirty days) in disposable income is supportable only as Stone failed to present evidence that he had basic human needs for his small amount of disposable income. Just as the victim had the burden to prove the value of her loss, Stone had the burden to prove his inability to pay. *See* WIS. STAT. § 973.20(14)(b). Stone did not produce evidence that he had necessities of life (transportation costs, medical, and hygiene expenses), and I cannot take judicial notice of those facts. It is my belief, however, that imposing a restitution order against a mentally disabled young man who could not work, who was under a WIS. STAT. ch. 51 commitment order placing him in a group home with a third party handling his meager finances, who had a spinal infection, who was prone to hearing "voices" and "seeing things," and who had a total of $3.75 of daily disposable income is not conducive to a defendant's rehabilitative needs. Stone passed away during the pendency of this appeal.

5