COURT OF APPEALS
DECISION
DATED AND FILED

December 23, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2172-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF1140

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

    PLAINTIFF-APPELLANT,

V.

ROBERT G. COTTER,

    DEFENDANT-RESPONDENT.

---

APPEAL from a judgment of the circuit court for Kenosha County: GERAD T. DOUGVILLO, Judge. *Reversed and cause remanded with directions*.

Before Neubauer, P.J., Grogan, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   The State of Wisconsin appeals from a judgment of conviction entered pursuant to Robert G. Cotter's guilty plea.  In connection with the plea, the circuit court declined to award restitution to Cotter's wife, referred to herein by the pseudonym Sarah,[1] who Cotter physically abused and threatened.  The State argues that the denial of restitution was error because it was premised on the court's mistaken belief that Sarah had to testify at the restitution hearing, and that sufficient evidence had not been presented to establish an entitlement to restitution by a preponderance of the evidence.  Because the evidence presented was sufficient to support an award of restitution, and the victim was not required to testify in order for restitution to be awarded, we reverse and remand this case to the circuit court for entry of an amended judgment that includes restitution in the amount of $20,047.68.

## BACKGROUND

¶2      In October 2020, the State filed a complaint charging Cotter with four offenses: (1) making terrorist threats in violation of WIS. STAT. § 947.019(1)(e); (2) possession of a firearm by a felon, contrary to WIS. STAT. § 941.29(1m)(a); (3) battery as an act of domestic abuse, contrary to WIS. STAT. § 940.19(1) (2019-20)  (current version at WIS. STAT. § 940.60(1));  and (4) disorderly conduct as an act of domestic abuse, contrary to WIS. STAT. § 947.01(1).

---

[1]  We identify Cotter's victim by a pseudonym consistent with the policy set forth in WIS. STAT. RULE 809.86(1) (2023-24).  All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

¶3      The charges arose out of events that occurred between October 3-6, 2020.  At various points over that four-day period, Cotter threatened to kill himself, Sarah, her co-workers, and law enforcement officers.  On the evening of October 3, Cotter told Sarah that he would "get[] my fucking guns" when she and several friends arrived at their home.  Later that night, Cotter struck Sarah in a barn on their property, yelled at her about having been out with her friends, and threatened to kill himself.  Cotter then followed Sarah into their home, where he held a gun to his head and threatened to shoot himself.  The following day, Cotter opened a safe in their bedroom, pointed to multiple firearms in the safe, and told Sarah that "he was going to kill himself."

¶4      On October 6, Cotter repeatedly called Sarah at work and screamed at her about divorce papers.  Sarah informed Cotter that she would leave the divorce papers at the front desk, which further enraged him.  Cotter told Sarah that he was going to drive to her office and shoot her and "everyone in the building" before killing himself.  Sarah informed her supervisors and continued to speak with Cotter while he threatened to kill everyone in her workplace.  Police were notified and Sarah's workplace was placed on lockdown for over five hours.  Cotter also threatened to kill the couple's animals and burn down their home with him inside it.

¶5      Cotter pled guilty to the disorderly conduct and felon in possession charges.  The battery and making terrorist threats charges were dismissed but read in at sentencing.  The circuit court sentenced Cotter to 45 days in jail on the disorderly conduct charge (which he had already served), withheld sentence on the gun possession charge, and placed Cotter on probation for 2 years, with a 6-month jail sentence stayed.

¶6      Before Cotter was sentenced, Sarah filed a claim with the Crime Victim Compensation Program (CVC) seeking to recover lost wages resulting from his criminal conduct.  CVC investigated the claim, obtained information from her employer and physician, and ultimately paid Sarah $20,047.68 in lost wages.  By virtue of its award to Sarah, CVC became subrogated to her rights to any court-ordered restitution and sought to recover the amount it paid from Cotter.  *See* WIS. STAT. § 973.20(9)(a).

¶7      On August 5, 2024, a court commissioner held a hearing to address CVC's restitution request.  The State called one witness, CVC claims specialist Nicole Rauls, and introduced documents she had obtained from Sarah's employer and physician to support the restitution award.  This evidence included a "Physician Certification" form from Sarah's doctor which confirmed that she had sought medical treatment for "injuries or emotional distress" she suffered as a result of Cotter's criminal conduct that disabled her from work.[2]  Rauls also obtained an "Employer Certificate" from Sarah's employer and her W-2s to verify the days she missed work and calculate a net daily wage to use in determining her lost wages.  Rauls explained that WIS. STAT. ch. 949 allows CVC to "make payment in personal injury of a victim, and personal injury also includes mental or psychological … injury as well."  *See* WIS. STAT. § 949.01(5) (for purpose of crime victim compensation, "'[p]ersonal injury' means actual bodily harm and includes … mental or psychological trauma").

---

[2]  Portions of the physician form are redacted; Rauls explained that the redactions were made "due to [WIS. STAT. ch.] 950 allowing victim's rights to privacy."  Rauls confirmed that all of the information on the form that she relied on was unredacted.

¶8      When the State moved to enter these documents into evidence, Cotter objected to the Physician Certification form because information concerning the nature of Sarah's injuries was redacted.  The commissioner asked the State to question Rauls about the nature of Sarah's injury.  Rauls confirmed that she was familiar with the nature of Sarah's injury but declined to disclose it "due to privacy."  She confirmed it was typical practice for CVC to submit redacted forms unless a court ordered otherwise.  The commissioner received the documents proffered by CVC into evidence over Cotter's objection; Cotter did not cross-examine Rauls, request that unredacted copies be submitted, or present any evidence.

¶9      At the conclusion of the hearing, the court commissioner ordered $20,047.68 in restitution.  Based on the evidence presented, the commissioner found "a causal nexus" between Cotter's criminal conduct and Sarah's injuries and rejected Cotter's arguments opposing restitution.  The following day, however, the circuit court issued a memorandum remanding the case to the commissioner for another hearing because it believed that "[i]n order to substantiate a claim made by the CVC, the individual victim[,] the person who was paid out from the CVC, must substantiate that claim themselves and allow for meaningful cross[-]examination and to satisfy statutory and caselaw requirements."  The court did not identify any statutes or case law that required Sarah's testimony to establish a restitution claim.

¶10     Before the hearing resumed, the CVC informed the circuit court that it would not subpoena Sarah to testify because that "would violate both the Wisconsin Constitution, (art. I, § 9m) and statutory victim rights under chapter 950."  It noted further that "no statute or case … stands for the proposition that CVC cannot pursue restitution without testimony of the crime victim."

¶11 The restitution hearing continued on August 30, 2024. Rauls again testified about Sarah's physical and emotional injuries, her resulting inability to work, and the forms CVC received from her physician and employer. Cotter again declined to cross-examine Rauls or present evidence of his own. Following the hearing, the court commissioner issued a set of findings of fact and conclusions of law in which she denied restitution. The commissioner's factual findings concerned Cotter's plea, the substance of Rauls' testimony, and the fact that neither Sarah nor Cotter testified. The commissioner found Rauls' testimony credible "based on knowledge of her claim[] file" but found that she had not sufficiently explained Sarah's injury. The commissioner further noted that Sarah had not provided information "as to the actual type of injury, medical treatment, amount of treatment, medical bills, and basis for the type of injury claimed to support any wage loss[.]" The absence of such evidence, in the commissioner's view, meant that CVC had not established "a causal nexus between the crime and the damage amount claimed in restitution."

¶12 After recounting the legal standards governing restitution awards, the court commissioner provided the following rationale for denying restitution:

> The [c]ourt did find Ms. Rauls' testimony to be credible to the extent that she was able to provide information based on her knowledge of her claim file, however, it was not complete and therefore, not sufficiently reliable after both days of hearings.… The victim, [Sarah], did not appear and did not testify. As a result, the [c]ourt does find that the victim … has failed to prove her loss by a preponderance of the evidence.

The circuit court adopted the commissioner's findings of fact and conclusions of law.

6

**DISCUSSION**

¶13    A circuit court has discretion in determining whether and how much to award in restitution. *State v. Stone*, 2021 WI App 84, ¶9, 400 Wis. 2d 197, 968 N.W.2d 761. We may only reverse a restitution award "if the … court applied the wrong legal standard or did not ground its decision on a logical interpretation of the facts." *Id.* (citation omitted). To the extent the court's decision rests on its interpretation of statutory provisions applicable to restitution awards, we review the court's interpretation de novo. *See State v. Wiskerchen*, 2019 WI 1, ¶16, 385 Wis. 2d 120, 921 N.W.2d 730. In addition, "whether a party has met his or her burden of proof is a question of law we review de novo[.]" *Korhumel Steel Corp. v. Wandler*, 229 Wis. 2d 395, 403, 600 N.W.2d 592 (Ct. App. 1999).

¶14    Wisconsin law strongly favors restitution and there is "a strong equitable public policy" in favor of compensating victims of crimes. *State v. Canady*, 2000 WI App 87, ¶8, 234 Wis. 2d 261, 610 N.W.2d 147 (citation omitted). In view of this public policy, Wisconsin courts must construe the statute governing restitution in criminal cases, WIS. STAT. § 973.20, "broadly and liberally in order to allow victims to recover their losses as a result of a defendant's criminal conduct." *Wiskerchen*, 385 Wis. 2d 120, ¶22 (citation omitted). "[R]estitution is the rule and not the exception and … should be ordered whenever warranted." *Canady*, 234 Wis. 2d 261, ¶8 (citation omitted).

¶15    WISCONSIN STAT. § 973.20(1r) requires a sentencing court to "order the defendant to make full or partial restitution under this section to any victim of a crime considered at sentencing … unless the court finds substantial reason not to do so and states the reason on the record." A "crime considered at sentencing" includes "any crime for which the defendant was convicted and any read-in

crime." Sec. 973.20(1g)(a). "If a crime considered at sentencing resulted in bodily injury," the court may order the defendant to "[r]eimburse the injured person for income lost as a result of [the] crime[.]" Sec. 973.20(3)(c). A restitution order may also require a defendant to "[p]ay all special damages, but not general damages, substantiated by evidence in the record, which could be recovered in a civil action against the defendant for his or her conduct in the commission of a crime considered at sentencing." Sec. 973.20(5)(a). Lost wages are recoverable under paragraph (5)(a). *State v. Muth*, 2020 WI 65, ¶54, 392 Wis. 2d 578, 945 N.W.2d 645.

¶16 Restitution hearings are informal and not governed by "the normal rules of evidence." *State v. Madlock*, 230 Wis. 2d 324, 335, 602 N.W.2d 104 (Ct. App. 1999). "Normal rules of practice, procedure[,] and pleading are also waived." *Id.* Under the restitution statute, "the victim carries the burden of proving the amount of loss sustained as a result of the crime by a preponderance of the evidence." *Id.* at 336; *see also* WIS. STAT. § 973.20(14)(a). To satisfy this standard, "[t]he victim needs to show that there is a 'causal nexus' between the crime and the victim's losses, such that the defendant's criminal activity was a 'substantial factor' in causing the losses." *Wiskerchen*, 385 Wis. 2d 120, ¶25 (citing *Canady*, 234 Wis. 2d 261, ¶9).

¶17 The State argues that the circuit court's denial of restitution rests on a legal error—its mistaken belief that Sarah had to testify in support of the award. In its memorandum directing the commissioner to hold a second hearing, the court indicated that her testimony was required "to satisfy statutory and caselaw requirements." The court did not identify any specific statutory provision or case that requires a victim to testify at a restitution hearing, and the State contends that WIS. STAT. § 973.20 imposes no such requirement. It also notes that our supreme

court has declined to add requirements to the statute. *See, e.g.*, *State v. Fernandez*, 2009 WI 29, ¶¶59-60, 316 Wis. 2d 598, 764 N.W.2d 509.

¶18 Cotter does not address this purported legal error in his brief to this court. He does not identify any statutory language or case that requires a victim to testify in support of a restitution award. Instead, he focuses on the purported insufficiency of evidence to sustain the award, contrasting this case with several others in which we upheld restitution awards where a victim testified and analogizing this case to *State v. Stowers*, 177 Wis. 2d 798, 807, 503 N.W.2d 8 (Ct. App. 1993), in which we set aside a restitution award after concluding that the victim's testimony was insufficient to establish the amount of medical damages awarded.

¶19 Though we could construe Cotter's failure to respond to the State's legal error argument as a concession that the circuit court erred, *see Charolais Breeding Ranches, Ltd. v. FPC Securities Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979), here we conclude that the State is correct on the merits. Neither the circuit court, the court commissioner, nor Cotter has identified a statute or case that required Sarah to testify at the restitution hearing. In *Stowers*, we noted that the provision in WIS. STAT. § 973.20 that permits restitution for medical and mental health costs "does not discuss the nature or extent of the proof that must be made to support a restitution order[.]" *Stowers*, 177 Wis. 2d at 806 (discussing § 973.20(3)(a)). That applies with equal force to the provision applicable here, § 973.20(3)(c), which permits an award for lost income. In addition to lacking support in the relevant statutory language, the court's ruling is inconsistent with the flexible and informal nature of restitution hearings, *see Madlock*, 230 Wis. 2d at 335, and with our obligation to construe the

9

statute liberally in favor of victims, *see* **Wiskerchen**, 385 Wis. 2d 120, ¶22. The court erred in denying restitution based on the absence of testimony from Sarah.

¶20 In adopting the commissioner's findings of fact and conclusions of law, the circuit court necessarily based its denial of restitution on a second factor—the purportedly insufficient testimony given by Rauls. Although the court adopted the commissioner's finding that Rauls' testimony was credible, it concluded that the testimony "was not complete and therefore, not sufficiently reliable" because Rauls was unable to explain the "the nature of the victim's injury." Absent such testimony, the court concluded that a causal nexus between Cotter's criminal conduct and the amounts paid by CVC for Sarah's lost wages had not been established.

¶21 We disagree. At the second hearing, Rauls confirmed that she had spoken with Sarah in February 2023, and confirmed that she had "both physical and emotional injury[.]" Turning to the form submitted by Sarah's physician, Rauls acknowledged that a portion of the form describing Sarah's injuries was redacted but confirmed that the redacted text described "bodily harm, injury or mental, emotional, [or] psychological harm[.]" She also noted that Sarah's physician had confirmed on the form that she "suffered injuries or emotional distress to the extent she was disabled from work" as the result of Cotter's criminal conduct. Rauls was not cross-examined and Cotter presented no contrary evidence. Though Rauls declined to provide specifics as to Sarah's injuries out of concern for her privacy as a victim, the unrefuted evidence presented by CVC was sufficient to establish the required causal link between her injuries and lost wages. The circuit court erred in reaching a contrary conclusion. The judgment of the court is reversed and this case is remanded for entry of an amended judgment ordering Cotter to pay $20,047.68 in restitution.

*By the Court.*—Judgment reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.